Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
**GOLOMB & HONIK, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Telephone: (215) 985-9177

Joseph H. Aughtman, Esquire *seeking pro hac*
Erby Fischer, Esquire *seeking pro hac*
**FISCHER GOLDASICH & AUGHTMAN, LLC**
One Federal Place
1819 Fifth Ave North, Suite 1050
Birmingham, AL 35203
Telephone: (205) 423-8504
*Counsel for Plaintiff(s)*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANE ROBERT HUGHES, on behalf of himself and all others similarly situated; | **Civ. No. 2:10-cv- 00846-SDW - MCA** |
| FRANKLIN WESLEY DONAHUE, on behalf of himself and all others similarly situated; | **FIRST AMENDED COMPLAINT** **JURY TRIAL DEMANDED** |
| BRAD STOWERS, on behalf of himself and all others similarly situated; | |
| FRANK NEWELL and ERIC HAGANS, on behalf of themselves and all others similarly situated; | |
| Plaintiffs, | |
| v. | |
| **PANASONIC CONSUMER ELECTRONICS COMPANY, A DIVISION OF PANASONIC CORPORATION OF NORTH AMERICA, AND PANASONIC CORPORATION OF NORTH AMERICA,** Defendants. | |

Plaintiffs, SHANE ROBERT HUGHES, FRANKLIN WESLEY DONAHUE, BRAD STOWERS, FRANK NEWELL and ERIC HAGANS, on behalf of themselves and all others similarly situated, allege the following against Defendants, PANASONIC CONSUMER ELECTRONICS COMPANY, a division of PANASONIC CORPORATION OF NORTH AMERICA, and PANASONIC CORPORATION OF NORTH AMERICA (collectively "Panasonic" or "Defendant"):

## NATURE OF THE CLAIMS

1.     Panasonic researches, designs, manufactures, advertises, markets, sells and distributes a wide variety of consumer and professional electronics products, including plasma televisions marketed as Panasonic "Viera" plasma televisions ("Televisions").

2.     To create and maintain on-screen images, Panasonic designs its televisions to cause voltage adjustments which, in turn, maintain overall picture quality.  Voltage adjustments are a necessary characteristic of all plasma televisions.

3.     With regard to 2008/2009 model year Televisions, Panasonic has defectively programmed and/or designed the Televisions to rapidly cause significant voltage adjustments in excess of what is necessary to maintain picture quality over the Televisions' lifespan.  This defective programming or design results in lower contrast ratios and less desirable image quality as the color detail, depth and tone are no longer of the same quality as when purchased.  It also causes prevalent Image Retention beyond that expected from a properly functioning plasma television.  Moreover, Panasonic's Infinite Black feature of the Televisions does not properly function.

4.      Panasonic was well aware or should have been aware that the voltage adjustments were improperly programmed and/or designed which would thereby cause rapid deterioration to the picture quality of the Televisions.

5.      In an effort to market the 2008/2009 model year Televisions, Panasonic represented to Plaintiff and the Class Members, through advertisements, marketing materials, warranties product guides and the picture quality displayed on brand new Televisions, that its products featured industry leading black levels and contrast ratios. Panasonic intended that consumers rely upon Panasonic's representations as to the black levels and contrast ratios of the aforesaid Televisions.

6.      Consumers, plasma television experts and the consumer electronic media who personally observed the picture quality displayed from a brand new Panasonic Television in a store or otherwise would have seen televisions that with excellent image quality, including industry leading black levels and contrast ratios. Consumers who read reviews of Panasonic Televisions were exposed to opinions that were based on the picture quality of a new Panasonic Television only. Panasonic intended that consumers rely upon what they saw and what plasma television experts and the consumer electronic media observed regarding the picture quality of the brand new Televisions.

7.      In fact, the Televisions suffer deterioration in picture quality after only approximately 400 hours of use. The picture that Panasonic advertises, that the experts and reviewers base their opinions on and that consumers observe in the store, deteriorates shortly after the Televisions are brought home.

8.      Since Panasonic also advertised that the Televisions reached the point of half-brightness after 100,000 hours of use and no plasma television had ever been designed to degrade as quickly as these Televisions, Panasonic knew or had reason to know that its Televisions would receive favorable reviews (at least initially) and that consumers would in fact purchase the Televisions based on Panasonic's advertisements, favorable reviews and the picture quality of brand new Televisions observed by consumers in stores and otherwise.

9.      Accordingly, Panasonic has utilized its technology to engage in a sophisticated "bait-and-switch," in that what consumers thought they were purchasing is no longer what they received and what they are watching in their living rooms.

## PARTIES

10.      Plaintiff, Shane Robert Hughes is an individual residing in and a citizen of the State of Alabama.

11.      Plaintiff, Franklin Wesley ("Wes") Donahue is an individual residing in and a citizen of the State of California.

12.      Plaintiff, Brad Stowers is an individual residing in and a citizen of the State of West Virginia.

13.      Plaintiffs Frank Newell and Eric Hagans are individuals residing in and citizens of the State of New Jersey.

14.      Defendant Panasonic Consumer Electronics Company is a division of Defendant, Panasonic Corporation of North America.  Panasonic Corporation of North America is a Delaware corporation with its headquarters and principal place of business at 1 Panasonic Way,

Secaucus, New Jersey 07094-2917. At all times relevant hereto, Panasonic designed, tested, manufactured, imported, distributed, marketed, advertised, warranted and sold the "Viera" plasma Televisions at issue throughout the United States.

## JURISDICTION, VENUE AND CHOICE OF LAW

15. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are 100 or more class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. Additionally, at least one Class member is a citizen of a state different from Panasonic.

16. This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that:

- The class, which includes an unknown number of persons but certainly more than 100, is so numerous that joinder of all members is impractical;

- There are substantial questions of law and fact common to the class including those set forth in greater particularity in Paragraph 111 herein;

- This case is properly maintainable as a class action pursuant to Rules 23(b) of the Federal Rules of Civil Procedure, in that:

  (a). questions of law and fact enumerated below, which are all common of the class, predominate over any questions of law or fact affecting only individual members of the class;

  (b). a class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

  (c). the relief sought in this class action will effectively and efficiently provide relief to all members of the class; and

  (d). there are no unusual difficulties foreseen in the management of this class action.

17.     Panasonic at all relevant times conducted substantial business in this district, many of the violations occurred in this district, and many of the acts and transactions alleged in this Complaint occurred in this district.

18.     The Court has personal jurisdiction over Panasonic, who has at least minimum contacts with the State of New Jersey because it has its principal place of business there, conducted business there and has availed itself of New Jersey's markets through its promotion, sales and marketing efforts.

19.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

20.     New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class under the Due Process Clause, 14th Amendment, § 1, and the Full Faith and Credit Clause, Article IV, § 1, of the U.S. Constitution.  New Jersey has a significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

21.     Panasonic's headquarters and principal place of business is located in Secaucus, New Jersey.  It also own property and conducts substantial business in New Jersey, and therefore New Jersey has an interest in regulating Panasonic's conduct under New Jersey's laws.  Panasonic's decision to make its principal place of business in New Jersey and avail itself of New Jersey's laws render the application of New Jersey law to the claims at hand constitutionally permissible.

22.     New Jersey is also the State from which Defendants' alleged misconduct emanated.  This conduct similarly injured and affected Plaintiffs and the Class members residing in New Jersey and the rest of the United States.  For instance, upon information and belief, Panasonic's marketing efforts relating to the Televisions were created and orchestrated from its headquarters in New Jersey.

23.     Further, New Jersey citizens have purchased Panasonic Televisions and have been injured in the same manner as citizens in other states based on the misrepresentations and omissions set forth in this Complaint.

24.     Accordingly, the application of New Jersey's laws to the proposed Class members is appropriate under New Jersey's choice of law rules because New Jersey has significant contacts to the claims of Plaintiff and all members of the proposed Class, and New Jersey has a greater interest in applying its laws here than any other State.

25.     Venue in the United States District Court for the District of New Jersey is proper because Panasonic resides, transacts business and is found within this District and a substantial part of the events giving rise to the claims at issue in this Complaint emanated from this District.

26.     New Jersey's substantive laws apply to the proposed Class, as defined herein, because Plaintiffs properly brings this Complaint in this District.  A United States District Court sitting in diversity presumptively applies the substantive law of the State in which it sits.

27.     As set forth herein, in the alternative, the Court may apply the substantially similar consumer protection laws of each of the states that the named class representatives reside in, as follows:

(a). Plaintiff Shane Hughes resides in Alabama;

(b). Plaintiff Wes Donahue resides in California;

(c). Brad Stowers resides in West Virginia; and

(d). Frank Newell and Eric Hagans reside in New Jersey.

## TOLLING

28. <u>Discovery Rule</u>: This cause of action accrued when Plaintiffs and other Class Members discovered that the picture quality of their Televisions suddenly and rapidly deteriorated, indicating that the Televisions may have a uniform inherent defect unknown previously. Because Panasonic concealed the fact that the voltage increases would suddenly deteriorate the Televisions' picture quality, Plaintiffs and all Members of the Class did not discover and could not have discovered this fact through reasonable and diligent investigation until their Televisions' picture quality suddenly and rapidly deteriorated.

29. <u>Fraudulent Concealment Tolling</u>: The statute of limitations has been tolled by Panasonic's knowing and active concealment of the facts as set forth herein. Panasonic kept Plaintiffs and Members of the Class ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on the part of Plaintiffs or the Class. Plaintiffs and the Class could not reasonably have discovered the fact that picture quality would deteriorate due to a uniform, inherent design defect.

30. <u>Estoppel</u>: Panasonic was and is under a continuous duty to disclose to Plaintiffs and the Class the true character, quality, and nature of the defective design of the Televisions. At all relevant times, and continuing to this day, Panasonic knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Televisions. Plaintiffs reasonably relied upon Panasonic's affirmative misrepresentations and knowing,

affirmative, and/or active concealment, and Panasonic knew or should have known the Class would do the same. Based on the foregoing, Panasonic is estopped from relying on any statutes of limitation in defense of this action.

## CLASS REPRESENTATIVES FACTUAL ALLEGATIONS

### Shane Hughes

31.     On or about June 17, 2009, Plaintiff Shane Hughes ("Hughes") purchased a certain Panasonic plasma Television having model number TC-P50G10 (S.N. ME91140353), which Television was manufactured, distributed and/or imported by Panasonic, and continues to be the owner of said Television.

32.     At all times relevant, Hughes lived in the state of Alabama.  He purchased the Television for his own personal, household use.

33.     Prior to purchasing the Television, Hughes had thoroughly and extensively researched the above-referenced Television model and Panasonic plasma televisions in general on www.panasonic.com.  The particular Panasonic web-page for the model which Hughes purchased indicated that www.CNET.com, the self-proclaimed "premier destination for tech product reviews," gave the Television a rating of "4.5 out of 5."  Panasonic's website further represents:

> A pre-discharge control system, the Real Black Drive system combines with NeoPDP technology to achieve next-generation black reproduction.  When you're watching movies, VIERA renders images just the way the director intended, even in scenes where it's difficult to achieve a proper balance of light and dark.

34.     Panasonic marketed its Televisions as having industry leading black levels and native contrast ratios.  Deeper black levels and higher contrast ratios deliver more accurate and

detailed colors in the final image which is produced on screen. Upon information and belief, the website through which the above-referenced representations were made is maintained in Secaucus, New Jersey by Panasonic.

35.     Hughes also visited www.CNET.com[1] directly. He also read the printed publication, "Home Theater Magazine" and its corresponding website[2] along with the printed publication, "Sound + Vision Magazine" and its corresponding website.[3] He read the reviews posted on these internet sites at his residence in Huntsville, Alabama; he read the printed publications while at a Books A Million store in Sevierville, Tennessee.

36.     Hughes then visited a Best Buy store in Alabama, where he noticed that the image produced by the Panasonic Television model which he later purchased exhibited significantly greater black levels than other televisions manufactured by competitors like Samsung and Sony.

37.     In June 2009, Hughes purchased the Panasonic Television from www.amazon.com, a Delaware corporation.

38.     Hughes used the Television at his residence until July of 2009, at which point the minimum luminance level (the MLL or black level) increased dramatically overnight. Upon seeing such, Hughes performed measurements on the Television using an X-rite Eye One Display LT calibration meter and Color HCFR calibration software. In doing so, he discovered

---

[1] Website and review outlet www.CNET.com is run by CBS Interactive, Inc., headquartered at 235 2nd Street, San Francisco, CA 94105. The terms of use for the internet site mandate that the use of the same is governed by the State of New York.
[2] Review outlet Home Theater Magazine is is headquartered at 261 Madison Ave., New York, NY 10016. The terms of use for the internet site mandate that the use of the same is governed by the laws of the State of Florida.
[3] Review outlet "Sound + Vision" is headquartered at 1633 Broadway, 43rd floor; New York, NY 10019. The terms of use for the internet site mandate that the use of the same is governed by the laws of the State of Florida.

that said measurements had degraded from an initial contrast ratio of 4906:1 to a much less desirable 2348:1 after less than 400 hours use.

39.     Sometime during September of 2009, Hughes contacted Panasonic seeking to have the problems corrected on his Television.  Panasonic documented Hughes' information and informed him that it would have its engineering team address the issue.  Approximately two months passed and Panasonic failed to respond to this complaint inquiry.

40.     Hughes then contacted Panasonic again to check on the status of his complaint inquiry.  At such time, he confirmed that his initial complaint was on file and that it was being investigated.  At this time, Panasonic informed him that his issue had now been forwarded to the "display engineering department."  To date, Panasonic has not responded to his complaint inquiry and has refused to fix the problem with his Television.

41.     At the time of the notification to Panasonic of said non-conforming conditions, the Television's express warranty was still in full force and effect.

**Franklin Wesley Donahue**

42.     On or about December 31, 2009, Plaintiff Franklin Wesley "Wes" Donahue ("Donahue") purchased a certain Panasonic Viera plasma Television having model number TC-P58V-10 (a high-end 58 inch set), Serial # MH93000514.  The Television was manufactured, distributed and/or imported by the Defendant.

43.     At all times relevant, Donahue lived in the state of California.  Donahue purchased the Television for his own personal, household use. Donahue still owns the set and continues to use it.

44.    Prior to purchasing the Television, Donahue had thoroughly and extensively researched the above-referenced Television and Panasonic plasma televisions in general on www.Panasonic.com. Panasonic marketed its televisions as having industry leading black levels and native contrast ratios. Deeper black levels and higher contrast ratios deliver more accurate and detailed colors in the final image which is produced on screen.

45.    Donahue also visited www.CNET.com and other websites that review consumer electronic products. He read these websites at home in Oak Park, California.

46.    Donahue then visited a Best Buy store in Thousand Oaks, California, where he noticed that the image produced by the Panasonic Television model which he later purchased exhibited significantly greater black levels than other televisions manufactured by competitors.

47.    Donahue purchased the Television from U.S. Appliance on its website http://www.us-appliance.com. Upon information and belief, U.S. Appliance is the online storefront for ABC Warehouse, a Michigan corporation.

48.    When Donahue first brought the Television home, he let it "burn in" for around 100 hours to let it adjust. Then he calibrated it using a Klein K-10, a professional calibrator that he hooked up to a laptop with the Klein software. He took notice of the white balance and the luminescence level for full black at that time.

49.    After two months of use, Donahue read online some of the complaints regarding Panasonic Televisions and re-tested his set. At the time, he did not see on the screen a noticeable difference in picture quality. He estimates that at the time, it had approximately 400 hours of

use. The levels recorded were only slightly higher than at the time of purchase (indicating an automatic increase in voltage).

50. After two more months of use, in April 2010, he decided to re-test the picture quality. He could see with the naked eye that the picture quality had degraded: juxtaposed against the sides of the set, the contrast was not as sharp and the black was not as black. He estimates that at the time, it had approximately 800 hours of use. The levels recorded by his calibrator were significantly higher than at the time of purchase.

51. Donahue contacted Panasonic about this. To date, Panasonic has refused to fix the problem with his Television.

52. At the time of the notification to Panasonic of said non-conforming conditions, the Television's express warranty was still in full force and effect.

**Brad Stowers**

53. On or about December 17, 2008, Plaintiff, Brad Stowers ("Stowers"), purchased a certain Panasonic plasma Television having model number TH42PX80U, Serial # MA82830306. The Television was manufactured, distributed and/or imported by Panasonic, and Stowers continues to be the owner of the Television.

54. At all times relevant, Stowers lived in the state of West Virginia. Stowers purchased the Television for his own personal, household use. Stowers still owns the set and continues to use it.

55. Prior to purchasing the Television, Stowers had thoroughly and extensively researched the Television model and Panasonic plasma televisions in general on consumer

electronics websites www.Crutchfield.com, www.amazon.com, www.OneCall.com, www.Vanns.com, www.ABT.com, and www.CNET.com. C-NET.com, the self-proclaimed "premier destination for tech product reviews," reviewed and summarized the Television's strengths as follows:

> Relatively inexpensive; produces a deep shade of black; accurate initial color temperature; solid connectivity with three HDMI inputs; handsome, understated exterior.

56.     Panasonic marketed the Television on its website, www.Panasonic.com, by touting it as follows:

> The incredible black reproduction of a Panasonic High-Definition Plasma TV results in impressive contrast and beautiful, natural colors. So you'll get warm, accurate skin tones, gorgeous greens, breathtaking blues and vivid reds. For color that's as rich and bold as life itself, look to a Panasonic Plasma TV.

57.     Deeper black levels and higher contrast ratios deliver more accurate and detailed colors in the final image which is produced on screen. Upon information and belief, the website through which the above-referenced representations were made, is maintained in Secaucus, New Jersey by Panasonic.

58.     Stowers read both editorial and user reviews posted on these internet sites at his residence in Culloden, West Virginia.

59.     Stowers then visited a Best Buy store and a Sears store in Barboursville, West Virginia, where he noticed that the image produced by the Panasonic Television model which he later purchased exhibited significantly greater black levels, contrast and picture quality than other televisions manufactured by competitors like Samsung and Sony. He specifically noted it having a similar quality as that of Pioneer Kuro models at a significantly lower price point.

60.     In December 2008, Stowers purchased the Panasonic Television from www.Sears.com.[4] He elected the "in Store pickup" option and took delivery of the television at the Sears retail store in Barboursville, West Virginia.

61.     Stowers used and continues to use the Panasonic Television at his residence. During the course of his viewing, he noticed degradation in the picture quality of his set, specifically a worsening of black level and contrast. Upon again consulting CNET.com, Stowers learned of the issues regarding Panasonic's voltage adjustments and concomitant worsening of picture quality.

62.     At the time of purchase, Stowers' Panasonic Television exhibited a superior picture quality than an older Samsung DLP television that he had purchased approximately two years previous to his Panasonic purchase. At the present, the older Samsung DLP television's performance equals or exceeds the performance of his Panasonic television with regard to picture quality.

**Frank Newell**

63.     On February 16, 2009, Plaintiff Frank Newell ("Newell"), purchased a certain Panasonic plasma Television having model number TH50PX80U, Serial # MC82270084. The Television was manufactured, distributed and/or imported by Panasonic, and Newell continues to be the owner of the Television. Upon information and belief, the Television was manufactured by Panasonic in August, 2008.

---

[4] Upon information and belief, the website is a division of Sears, Roebuck and Co., a New York corporation.

64.    At all times relevant, Newell lived in the state of New Jersey.  Newell purchased the Television for his own personal, household use.  Newell still owns the set and continues to use it.

65.    Prior to purchasing the Television, Newell researched the Television model and Panasonic plasma televisions in general by reading Consumer Reports Magazine.  In Consumer Reports, the Television received a glowing recommendation to consumers.

66.    Newell read the magazine and the review at his residence in Gloucester City, New Jersey.

67.    Newell then visited a Boscov's store in Deptford, New Jersey, where he noticed that the image produced by the Panasonic Television model which he later purchased exhibited significantly greater black levels, contrast and picture quality than other televisions manufactured by competitors, including Sony and Samsung.

68.    In February 2009, Newell purchased the Panasonic Television from Boscov's.

69.    Newell took the Television home but did not plug it or use it at all for three months.  It remained in the box during this time, stored as instructed.  He installed the Television and began to use it in May 2009.  From that time to the present, Newell estimates that his Television is in use approximately six hours a day from Monday through Friday and "all day long" on the weekends.

70.    At the time he installed the Television, Newell noticed that it exhibited a superior picture quality.

71.     During the course of his viewing, he noticed degradation in the picture quality of his set, specifically a "graying of the blacks" and the details on the screen looking more and more fuzzy.  His observations have been confirmed from visitors to his home who have seen the Television and noticed the difference in picture quality.

**Eric Hagans**

72.     In or around February of 2009, Plaintiff Eric Hagans ("Hagans") purchased a certain Panasonic plasma Television having model number TH-42-PZ80U, Serial # LF80850819. He purchased the Television for his girlfriend, Tracey Daleus, with whom he lives in Cherry Hill, New Jersey.  The Television was manufactured, distributed and/or imported by Panasonic.

73.     At all times relevant, Hagans lived in the state of New Jersey.  He purchased the Television for personal, household use for he and his girlfriend, and they continue to use it in the same capacity.

74.     Prior to purchasing the Television, Hagans researched the Television model and Panasonic plasma televisions in general by reading a number of websites at home, including www.CNET.com, and by looking at televisions at a number of locations, including a P.C. Richards & Son store in Mount Laurel, New Jersey and a Sears store in Moorestown, New Jersey.

75.     Hagans noticed that the Panasonic Television displayed richer, deeper colors than competitor models and excellent contrast.

76. The salespeople at Sears recommended the Panasonic Television that he eventually purchased based on superior picture quality and its receipt of excellent reviews in the consumer electronics community.

77. In approximately February of 2009, Hagans purchased the Panasonic Television from Sears.

78. Hagans took the Television home and began to use it a month or two later. Upon installing the Television, he noticed that the picture looked excellent initially and produced vivid colors, the same high picture quality he had observed in the store.

79. Hagans and Daleus estimate that the Television is in use approximately seven hours a day.

80. During the course of their viewing, Hagans and Daleus noticed degradation in the picture quality of the Television. They observe that the colors have significantly faded, especially the blacks, and the picture was grainy and not as crisp as it was when they first plugged it in.

**FACTUAL ALLEGATIONS COMMON TO ALL CLASS MEMBERS**

81. Panasonic is in charge of all aspects of the research, development, design and manufacture of Panasonic Viera plasma Televisions.

82. In 2008 and 2009, Panasonic distributed and sold these Televisions. Upon information and belief, 2008 models include PX80, PZ80, PX85, PZ800 and PZ850. Upon information and belief, 2009 models include the following series: X, X14, S, S14, G10, G15, V10, C1 and Z1. Roughly two million Televisions were sold in the United States in 2008-2009.

83. For all models manufactured by Panasonic in 2008-2009, the Televisions were designed such that their picture quality degraded rapidly after only 400 or 500 hours of use.

84. The rapid degradation was discovered to be attributed to an increase in the MLL of the Television, an aspect that cannot be controlled or changed by the user. These levels continue to increase at incremental levels. The color detail, depth and tone are no longer of same quality. Further, the Televisions begin to exhibit prevalent Image Retention beyond that expected from a properly functioning plasma television and Panasonic's Infinite Black feature begins to fail to operate.

85. Degradation is the result of increasing voltage. While all plasma televisions require voltage adjustments over time to maintain overall picture quality, upon information and belief, no plasma television ever manufactured and sold in the United States was ever designed to increase voltage so significantly and so quickly.

86. For example, the Pioneer Kuro plasma television, considered the gold standard of televisions before Pioneer announced their exit from the business in February 2009,[5] was designed to display excellent picture quality when brand new like the Televisions at issue, but did not degrade quickly and still lasted a long time. Many of the designers of the Kuro plasma television now work for Panasonic.

87. Panasonic controls the marketing and advertising of the Televisions. Panasonic's web-site, www.panasonic.com, has claimed:

> A pre-discharge control system, the Real Black Drive system combines with NeoPDP technology to achieve next-generation

---

[5] The Pioneer line was officially discontinued in March 2010.

> black reproduction. When you're watching movies, VIERA
> renders images just the way the director intended, even in scenes
> where it's difficult to achieve a proper balance of light and dark.

88. In an effort to market the 2008/2009 model year plasma Televisions, Panasonic represented to consumers, including Members of the Class, experts and the consumer electronics media through advertisements, marketing materials, warranties and product guides that its products feature "industry leading" black levels and contrast ratios.

89. Panasonic's advertising and marketing efforts were successful. Reviews of 2008 and 2009 Televisions were glowing. On www.CNET.com, the self-proclaimed "premier destination for tech product reviews," the consumer electronics reviewer gave the Television a rating of "4.5 out of 5," citing "Superb Black Level Performance . . . [that] looked deeper and more realistic than other [competing] displays" in head-to-head comparisons.

90. Panasonic intended that consumers would rely upon its representations as to the black levels and contrast ratios of the Televisions. It also knew that if it advertised that the Televisions would exhibit increased minimum luminance levels after a short period of use, consumers would not purchase the Televisions in such high volumes and instead would purchase competitors' brands.

91. The experts at www.CNET.com figured out that they and consumers had been deceived by Panasonic's "bait-and-switch" design.

92. Based on inquiries from affected users, CNET contacted Panasonic and received a statement confirming that the problem was due to an:

> automatic control which adjusts an internal driving voltage at
> predetermined intervals of operational hours . . .[and that] as a

result of this automatic voltage adjustment, background brightness
will increase from its initial value.

93. In other words, the minimum luminance level is designed to increase as the Television is used, directly resulting in lower contrast ratios and less desirable image quality. Panasonic admitted that the Televisions do not produce the same image quality than they did when new and that Panasonic represented it would produce. This is behavior had never been disclosed by Panasonic in the past to consumers in any fashion.

94. Panasonic was well aware or should have been aware that the voltage adjustments were improperly programmed and/or designed which would thereby cause deterioration to the picture quality of the Televisions. Indeed, Panasonic received complaints from Plaintiff consumers of the deterioration in picture quality during the first year of the Televisions' useful lives.

95. Despite the fact that Panasonic knew that the "automatic voltage adjustment" increase would increase the Televisions' background brightness and minimum luminance level to a point where they suffer lower contrast levels and a less desirable image quality immediately in the first year of use along with an increase in Image Retention and a failure of its Infinite Black feature, its advertisements, marketing materials and warranties fraudulently and falsely fail to report that this negative change will occur. Panasonic made no efforts to correct its fraudulent advertisements, marketing materials or warranties. Rather, Panasonic has continued to represent that the Televisions are functioning properly and as designed.

96. Panasonic's failure to inform Plaintiffs and the Class Members of the dramatic, sudden deterioration of picture quality within the first year of the Televisions' useful life has deprived the Plaintiff and the Class Members the benefit of their bargains.

97.     CNET has continued to research Panasonic's deception.   It has run multiple controlled tests on Panasonic Televisions.   The results of these tests have confirmed that a significant reduction in black levels and contrast ratios occurs in the Televisions within the first 400-500 hours of use.

98.     These results prompted CNET to amend its review with an Editors Note, detailing the problem and reducing the "performance rating" of the Televisions.   Of course, these revised amendments do not assist or inform consumers who already bought the Televisions based, at least in part, on CNET's favorable review.

99.     To date, Plaintiffs have been unable to ascertain what can be done to restore their Televisions to the state they were in prior to the deterioration of the picture quality as set forth herein.

100.    Panasonic has yet to cure any of the defects as to the Televisions.  Panasonic has refused to issue refunds or provide replacement Televisions free of charge to Plaintiff or other Class Members who are either inside or outside the applicable warranty period.  Although there are countless others who have experienced the same problem, Panasonic either cannot or will not offer a solution to the problems described herein or otherwise repair or replace the Televisions.

101.    Panasonic made a corporate decision to conceal material information from consumers and moreover, it made uniform misrepresentations about the quality and features of the Televisions.   Panasonic obtains substantial revenues from its misleading, deceptive and unfair conduct by enticing consumers to buy its Televisions based on this conduct.   As a proximate result, Plaintiffs and Members of the Class have suffered damages, in that they have purchased Panasonic Televisions that do not comport with the representations made by

Panasonic as to image quality or available features and thus have been deprived of the benefit of their bargains.  In so doing, Panasonic has committed consumer fraud, as defined by New Jersey Stat. §§ 56:8-1 *et seq.,* and other states' consumer protection acts, breached its warranty obligations, and unjustly enriched itself.

102.    Plaintiffs therefore bring this action on behalf of a proposed nationwide class of similarly situated Panasonic Television owners.

## CLASS ALLEGATIONS

103.    Plaintiffs bring this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and as representatives of a Class of individuals and entities who own or purchased any 2008/2009 model Panasonic Viera Plasma Televisions.

104.    Plaintiffs bring this action as class representatives to recover damages and/or refunds from Panasonic for consumer fraud as expressly defined in New Jersey Stat. 56:8-1 *et seq.* and other states' consumer protection acts, warranty violations, and unjust enrichment.

105.    This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of the Federal Rules of Civil Procedure Rule 23(a)(1-4) and (b)(1).

106.    The Plaintiff Class is defined and proposed as follows:

> All individuals and entities in the United States who own or purchased 2008/2009 model Panasonic Viera Plasma Televisions.

107.    Collectively, these persons will be referred to as the "Class."

108.   Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

109.   Excluded from the Plaintiff Class are:

(a).   Defendant and any entities in which Defendant has a controlling interest;

(b).   Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of Defendant;

(c).   The Judge to whom this case is assigned and any member of the Judge's immediate family and to any other judicial officer assigned to this case;

(d).   Claims for personal injury, wrongful death and/or emotional distress;

(e).   All persons or entities that properly execute and timely file a request for exclusion from the Class;

(f).   Any attorneys representing the Plaintiffs or the Class; and

(g).   All governmental entities.

110.   Numerosity – Fed. R. Civ. P. 23(a)(1).  The Class members are so numerous that their individual joinder is impracticable.  The exact number or identification of the Class members is presently unknown, but it is believed that the Class members number over one hundred and is at the least in the thousands if not the millions.  The identity of the Class members is ascertainable.  In addition to registration rolls maintained by the Defendant, the Class members may be located and informed of the pendency of this action by a combination of electronic bulletins, e-mail, direct mail and public notice, or other means.

111.   Predominance of Common Questions – Fed. R. Civ. P. 23(a)(2), 23(b)(3).  Common questions of law and fact exist as to all the Class Members and predominate over questions affecting only individual Class Members.  These common questions include the following:

(a). Whether Panasonic knew or should have known that the defective automatic voltage adjustment would cause black levels to increase, contrast ratio to decrease, picture quality to deteriorate dramatically, that Image Retention would substantially increase and Panasonic's Infinite Black Feature would fail to function, all as previously stated herein;

(b). Whether Panasonic misrepresented facts in its marketing and advertising that were material to Plaintiffs and the Class as defined by the New Jersey Consumer Fraud Act and other states' consumer protection acts;

(c). Whether Panasonic made a misrepresentation or a false promise, or concealed, suppressed or omitted any material fact, with intent that consumers rely on such concealment or omission in connection with the sale or advertisement of any merchandise, which is prohibited by the New Jersey Consumer Fraud Act and other states' consumer protection acts;

(d). Whether Panasonic knew or should have known that manufacturing a product that displayed significantly better image quality as a brand new product would have necessarily led to better initial reviews and would have misled consumers into believing that the image quality they observed in the showroom would be the same one they would see in their homes shortly after they purchased the product, and if so, whether it is prohibited by the New Jersey Consumer Fraud Act and other states' consumer protection acts;

(e). Whether Panasonic's conduct breached the implied warranty of merchantability;

(f). Whether Panasonic's representations regarding the Televisions' black level contrast ratio and Infinite Black feature created an express warranty, and if so, whether Panasonic's conduct breached that express warranty;

(g). Whether Panasonic has been unjustly enriched at the expense of Plaintiffs and the Class members;

(h). Whether Plaintiffs and the Class Members suffered any ascertainable loss of money or property as a result of their purchase and use of the Televisions; and

(i). Whether Plaintiffs and the Class Members are entitled to recover damages, including cost of repair, refunds, treble and damages sustained, interest, attorneys' fees, filing fees, and reasonable costs of suit.

112. <u>Typicality – Fed. R. Civ. P. 23(a)(3)</u>. Plaintiff's claims are typical of claims of all of the Members of the Class, all of whom own or purchased 2008/2009 Panasonic Televisions.

113.   Adequacy – Fed. R. Civ. P. 23(a)(4); 23(g)(1).   Plaintiffs are adequate representatives of the Class because they fit within the class definition and their interests do not conflict with the interests of the Members of the Class they seek to represent.   Plaintiffs are passionate about this litigation personally and will prosecute this action vigorously for the benefit of the entire Class.   Plaintiffs are represented by experienced and able attorneys from coordinated law firms that will collectively and jointly serve as class counsel.   Class counsel has litigated numerous class actions, and Plaintiffs' counsel intends to prosecute this action vigorously for the benefit of the entire Class.   Plaintiffs and class counsel can fairly and adequately protect the interests of all of the Members of the Class.

114.   Superiority – Fed. R. Civ. P. 23(b)(3).   The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts.   Further, individual litigation has the potential to result in inconsistent or contradictory judgments.   A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**COUNT I**
**New Jersey Consumer Fraud Act**
**(On Behalf of the National Class)**

115.   Plaintiffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

116.   Plaintiffs and the Class Members are consumers who own or purchased 2008/2009 Model Panasonic Televisions.   The Televisions are "goods," "merchandise," or

"services," and Plaintiffs' and the class members' purchases each constituted a "transaction." Panasonic's sale of the Televisions through a wide network of distribution occurs in the regular course of its business.

117. Panasonic violated the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2, which provides in part that the use by any person of "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation," or "the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission," in connection with the sale or advertisement of any merchandise or the subsequent performance of such person, is unlawful.

118. Panasonic, through its marketing practices, advertising literature and product specifications, used an unconscionable commercial practice, deception, fraud, false pretense, false promise, or misrepresentation in connection with the sale of the Televisions by falsely promising and representing that the Televisions would exhibit and maintain industry leading black levels, high contrast ratios, overall excellent picture quality and an Infinite Black feature, and concealing information about the way the Televisions are designed to rapidly degrade, even though Panasonic knew that automatic voltage increase would deteriorate the black level, contrast ratio and picture quality long before the useful life of the Television would end. Panasonic continues to misrepresent the performance of these Televisions to this day, though it has publically acknowledged that voltage increases do occur.

119. Panasonic knowingly concealed and/or omitted material facts, that the aforesaid deterioration would dramatically occur, with the intent that Plaintiffs and the Class rely upon that

concealment, suppression or omission to purchase the Televisions, all as prohibited by the New Jersey Consumer Fraud Act.

120.    Panasonic continues to conceal those facts to this day, and still touts the overall picture quality and performance of the Televisions.

121.    Plaintiffs and reasonable consumers like them were deprived of Panasonic's knowledge that the Televisions would suffer rapid, dramatic, sudden picture quality deterioration and a failure of advertised features.  Plaintiffs and Members of the Class suffered ascertainable loss of money or property as a result of Panasonic's deception, fraud, false pretenses, false promises, unfair practices, misrepresentations, concealments, suppressions, or omissions, all as defined under the New Jersey Consumer Fraud Act.

## COUNT II
### Violations of State Consumer Protection Laws
#### (On Behalf of State Subclasses)

122.    Plaintiffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein.  This claim is asserted on behalf of the Members of each State Subclass under their respective consumer protection statutes.

123.    Panasonic engages in unfair business practices relating to the research, design, manufacture, advertising, marketing, distributing and selling of the Televisions to consumers, in violation of the New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, *et seq.*

124.    Panasonic engages in unfair business practices relating to the research, design, manufacture, advertising, marketing, distributing and selling of the Televisions to consumers, in violation of the West Virginia Protection Act, W.Va. Code §§ 46 A. -6-101 *et. seq.*

125. Panasonic engages in unfair business practices relating to the research, design, manufacture, advertising, marketing, distributing and selling of the Televisions to consumers, in violation of the Alabama Deceptive Trade Practices Act, Alabama Code Title §§ 8-19-1 *et seq.*

126. Panasonic engages in unfair business practices relating to the research, design, manufacture, advertising, marketing, distributing and selling of the Televisions to consumers, in violation of California law, including the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et. seq.* and the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et. seq.*

127. As redress for Panasonic's repeated and ongoing violations of these consumer protection statutes, Plaintiffs and the Classes are entitled to, *inter alia*, damages and declaratory relief.

### COUNT III
### Breach of Express Warranty

128. Plaintiffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

129. Panasonic has provided to Plaintiffs and the Class Members an express warranty in the form of written affirmations of fact promising that the Televisions will be free of defect for one calendar year from date of purchase. Pursuant to the express warranty created by those affirmations of fact, Panasonic is obligated to repair and/or service any defects or problems with the Televisions that Plaintiffs and the Class Members experienced. In exchange for these duties and obligations, Panasonic received payment of the purchase price for the Televisions from consumers, including the Plaintiffs and the Class Members.

130. Panasonic breached the express warranty created by its affirmations of fact regarding the black levels, contrast ratio, picture quality and Infinite Black feature because the Televisions do not perform as promised in those affirmations.

131. Further, Panasonic breached the express warranty created by the image quality displayed by brand new Televisions because the Televisions do not display the same quality image after being in use for a short period of time.

132. As described above, Plaintiffs and the Class Members' Televisions did not conform to Panasonic's affirmations of fact regarding black level, contrast ratio, picture quality and its Infinite Black feature.

133. This defect is due to fundamental design, engineering, and manufacturing errors well within Panasonic's area of experience and expertise and which were and are present when the Televisions leave Panasonic's control.

134. The written warranty provided by Panasonic to Plaintiffs and the Class Members is expressly limited, with regard to the Televisions, to a period of one year from date of purchase and specifically excludes any coverage for or damage that occurs as a result of Image Retention.

135. The time limit and Image Retention subject matter limitation of the written warranty are unconscionable and unenforceable because:

(a). Panasonic, prior to selling the plasma Televisions, was aware of the defect causing the black level, contrast ratio and picture quality to deteriorate and knew or should have known that the Television performance would deteriorate; and

(b).    Panasonic, prior to selling the Televisions, was aware of the defect causing Image Retention to dramatically increase along with the picture quality deterioration and that the Infinite Black feature would fail as well.

136.    Panasonic had superior knowledge of the Televisions and knew or should have known the warranty would not provide adequate coverage.

137.    Plaintiffs and the Class had no meaningful choice in determining the warranty's time and subject matter limitations; the terms of the limited warranties unreasonably favor Panasonic over Plaintiffs and the Class Members; and a gross disparity in bargaining power existed between Panasonic and Plaintiffs and the Class Members.

138.    In addition, the remedy provided by Panasonic under the written warranty fails to satisfy its essential purpose.  Plaintiffs and the Class Members have received no repair or replacement of the defective Televisions.

139.    As a result of the foregoing, Plaintiffs and the Class Members have suffered damages that were directly and proximately caused by Panasonic's conduct and by the defect causing the Televisions' performance and picture to deteriorate as set forth herein.  Plaintiffs and the Class Members are entitled to damages in an amount to be determined at trial.

## COUNT III
### Breach of Implied Warranty of Merchantability

140.    Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

141.    Panasonic is a merchant with respect to 2008/2009 Model Panasonic Televisions.

142.    At the time Plaintiffs and the Class Members purchased their Televisions, Panasonic represented that the Televisions had "industry leading" black levels, a high contrast

ratio and superior picture quality, as well as an Infinite Black feature. Implied in Defendant's representations is that the Televisions would continue to function for their useful life and that they were free of defects and suitable for use.

143. Defendants have brought themselves into privity with Plaintiffs and the Class Members by warranting the Televisions to them directly and/or through the agency doctrine.

144. Because the Televisions' image quality deteriorates as set forth herein, Plaintiffs' and the Class Members' Televisions do not operate as represented, and the Televisions are not fit for their ordinary purpose of providing the plasma display technology that the consumer observed when the Televisions were purchased.

145. As a result, Plaintiffs and the Class Members have suffered or will suffer ascertainable loss of money and property as a direct and proximate result of Defendant's practices.

## COUNT IV
### Unjust Enrichment

146. Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

147. When seeking to purchase a television or video monitor, consumers have a wide array of mainstream choices other than plasma monitors. These include a variety of CRT, LCD, LED, DLP, and LCOS technologies in multiple configurations—direct view, rear projection, or front projection.

148.    Consumers purchase plasma monitors, despite their relatively expensive cost per size of screen, because these consumers are seeking the highest image resolution with deep, saturated colors that their budget affords them.

149.    Plaintiffs and the Class Members purchased their Panasonic plasma Televisions in order to view highest image resolution plasma display technology when watching television.

150.    Panasonic failed to disclose that the picture quality of the Televisions it sold would dramatically deteriorate from the image observed in the showroom during the first year of use due to the defective design as set forth previously herein and that the Infinite Black feature would fail to function altogether.

151.    Panasonic did not disclose to Plaintiffs and the Class Members that they would incur significant costs to repair or replace their Televisions long before the expiration of the expected useful life.

152.    By purchasing the Televisions, Plaintiffs and the Class Members conferred a benefit upon Panasonic, without knowledge that the plasma display would deteriorate prematurely and require additional out-of-pocket costs to repair or replace.

153.    Panasonic knowingly accepted and retained this non-gratuitous benefit conferred on it by Plaintiffs and the Class Members despite their knowledge that consumers of their product demanded high picture quality, the same high picture quality the consumers observed when the product was brand new, and were misled because the picture quality of the Televisions deteriorated rapidly due to the improper voltage adjustment.

154.    Plaintiffs and the Class Members now must spend (or have spent) hundreds or thousands of dollars to repair or replace their failed, defective Televisions with properly operating televisions manufactured by Panasonics competitors, none of which manufacture plasma televisions with the defective design employed in the Panasonic Televisions.

155.    Panasonic has been unjustly enriched in retaining the payments paid by Plaintiffs and the Class Members for the Televisions and in avoiding the financial obligations associated with honoring its express and implied warranties.

156.    Panasonic's retention of the non-gratuitous benefit conferred by Plaintiffs and the Class Members under these circumstances is unjust and inequitable.

157.    No other remedy at law can adequately compensate Plaintiffs and the Class Members for the economic damages resulting from Panasonic's wrongful actions as alleged herein.

158.    Because Panasonic's retention of the non-gratuitous benefit conferred upon it by Plaintiffs and the Class Members is unjust and inequitable, Panasonic must pay restitution to Plaintiffs and the Class Members for its unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all Class Members they seek to represent, demand judgment against Panasonic as follows:

(a).    An order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as Class Representatives and their attorneys as Class Counsel to represent the Class Members;

(b).    An order declaring that the Panasonic's conduct to be deceptive, wrongful, unfair and unconscionable;

(c).     An order declaring that Panasonic breached its express warranty, the implied warranty of merchantability and was unjustly enriched;

(d).     An order entering judgment in favor of Plaintiffs and the Class Members against Panasonic;

(e).     An order awarding damages, including restitution, actual damages, treble damages, and punitive and exemplary damages, against Panasonic in favor of Plaintiffs and Class Members in an amount to be determined by the Court as fair and just given Panasonic's wrongful conduct;

(f).     An order awarding Plaintiffs and Class Members prejudgment interest on any damages awarded by the Court;

(g).     An order of restitution and all other forms of equitable monetary relief;

(h).     Injunctive relief or an order of non-monetary relief as the Court may deem proper; and

(i).     An order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses, including costs of experts and of suit.

### **DEMAND FOR JURY TRIAL**

Plaintiffs and Class Members hereby demand a jury trial on all claims so triable in this action.

Respectfully submitted,


_____
Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
**GOLOMB & HONIK, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Telephone:  (215) 985-9177

Joseph H. Aughtman, Esquire *seeking pro hac*
Erby Fischer, Esquire *seeking pro hac*
**FISCHER GOLDASICH & AUGHTMAN, LLC**
One Federal Place,
1819 Fifth Ave North, Suite 1050
Birmingham, AL 35203
Telephone:  (205) 423-8504

Dated: May___, 2010_____

*Counsel for Plaintiff(s)*