<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                                :
SHANE ROBERT HUGHES, et al., on       :
behalf of himself and all others similarly   :        Civil Action No. 10-846 (SDW)
situated,                                       :
                                                :
         Plaintiffs,                            :
                                                :                **OPINION**
v.                                              :
                                                :              July 21, 2011
PANASONIC CONSUMER                    :
ELECTRONICS COMPANY,              :
A DIVISION OF PANASONIC          :
CORPORATION OF NORTH             :
AMERICA, et al.,                          :
                                                :
         Defendants.                          :
_____ :

**WIGENTON,** District Judge.

Before the Court is the motion of defendants Panasonic Consumer Electronics Company

("Panasonic Consumer") and Panasonic Corporation of North America ("Panasonic Corporation")

(sometimes collectively "Panasonic") to dismiss the Amended Complaint for failure to state a claim,

pursuant to FED. R. CIV. P. 12(b)(6), and for failure to plead with sufficient particularity pursuant to

FED. R. CIV. P. 9(b). (Dkt. Entry 18).  Alternatively, Panasonic moves to strike all of the class

allegations in the Amended Complaint pursuant to FED. R. CIV. P. 12(f) and 23(d)(1)(D).  (Dkt. Entry

19).   Plaintiffs Shane Hughes ("Hughes"), Franklin Donahue ("Donahue"), Brad Stowers

("Stowers"), Frank Newell ("Newell"), and Eric Hagans ("Hagans"), individually, and on behalf of

a putative national class of consumers (sometimes collectively "plaintiffs") oppose both motions.

This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  Venue is proper, pursuant to 28 U.S.C. § 1391(a).  The motions are decided without oral argument pursuant to FED. R. CIV. P. 78.  For the reasons stated below, the Court grants Panasonic's motion to dismiss plaintiffs' consumer fraud claims (Counts I and II), breach of warranty claims (Counts III and IV), and unjust enrichment claims (Count V).  These claims will be dismissed without prejudice, with a right to re-plead.  As the Court dismisses the Amended Complaint in its entirety, Panasonic's motion to strike the class allegations is dismissed as moot.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs purchased allegedly defective Panasonic Viera model Plasma Televisions ("Televisions") in 2008 and 2009.  (Am. Compl., at ¶ 3).  Plaintiffs putatively represent a class defined as "individuals and entities who own or purchased any 2008/2009 model Panasonic Viera Plasma Television[sic]."  (Id. at ¶ 103).

### A.      Allegations Common To All Plaintiffs

Defendant Panasonic Corporation is a Delaware corporation with its corporate headquarters and principal place of business in Secaucus, New Jersey.  (Id. at ¶¶ 14, 21).  Defendant Panasonic Consumer is a division of Panasonic Corporation.  (Id.)  Together, they research, design manufacture, advertise, market, sell and distribute nationwide a large variety of consumer and professional electronic products, including the Televisions at issue here.  (Id. at ¶ 1).

The Televisions suffer from increased "voltage adjustments"[1] causing a rapid deterioration

---

[1] According to plaintiffs, voltage adjustments are a necessary characteristic to maintain overall picture quality on the Televisions.  (Am. Compl., at ¶ 2).  As such, plaintiffs allege that Panasonic designs the Televisions in a manner, which causes an increase in voltage adjustments. (Id.)

in the Televisions' picture quality (the "Defect").   (Am. Compl., at ¶¶ 3, 7, 83-85, 92-93).

Specifically, the Defect in programming and/or design "results in lower contrast ratios and less

desirable image quality as the color detail, depth and tone are no longer of the same quality as when

purchased."  (Id. at ¶ 3).  The Defect causes "prevalent Image Retention beyond that expected from

a properly functioning plasma television," thereby causing the Televisions' "Infinite Black feature"

("black levels") to function improperly.[2]  (Id. at ¶ 7).  According to plaintiffs, the Defect materializes

after only "approximately 400 hours of use."   (Id.)

According to plaintiffs, Panasonic knew or should have known of the Defect but failed to

disclose it to the public.  (Id. at ¶¶ 4, 95, 119).  Instead, Panasonic falsely represented to plaintiffs

and the class members, through the use of advertising, marketing materials, warranties product

guides, and its display of plasma television models in retail stores, that the Televisions "featured

industry leading black levels and contrast ratios" and excellent picture quality.  (Id. at ¶¶ 5, 118).

Panasonic also falsely advertised that the Televisions "reached the point of half-brightness after

100,000 hours of use."  (Id. at ¶ 8).  Additionally, Panasonic's website represents that:

> [a] pre-discharge control system, the Real Black Drive system combines with NeoPDP technology to achieve next-generation black reproduction. When you're watching movies, VIERA renders images just the way the director intended, even in scenes where it's difficult to achieve a proper balance of light and dark.

---

[2] In their opposition brief, plaintiffs contend that an independent tech product review website reported its own testing results which revealed that Panasonic's 2010 plasma televisions do no degrade like the 2008 and 2009 models.  (Opp. Bf. at 2).  Yet, "[o]n a 12(b)(6) motion, the district court is limited to the facts alleged in the complaint, not those raised for the first time by counsel in its legal memorandum."  Town of Secaucus v. U.S. Dep't of Transp., 889 F. Supp. 779, 791 (D.N.J. 1995).  See Commonwealth of Pennsylvania v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir.1988).  Accordingly, the Court will not consider these allegations in analyzing the merits of Panasonic's motion to dismiss.

(Id. at ¶ 87).

Panasonic knew or had to know that Plasma television experts and the consumer electronic media would report favorably on the Televisions based on Panasonic's marketing and their own observations of the Televisions' superb picture quality.  (Id. at ¶¶ 5-6, 8-9).  Indeed, the Televisions received favorable reviews from the industry experts and consumers.  (Id. at ¶ 6).  In turn, consumers, such as plaintiffs and the class members, read these reviews, relied on Panasonic's representations concerning the industry leading black levels and contrast ratios, and/or personally observed the Televisions' excellent picture quality on models displayed in retail stores.  (Id.)  Yet, Panasonic concealed the Televisions' design defect.  (Id. at ¶¶ 7, 118).

At some point, industry experts at CNET contacted Panasonic about the alleged Defect.  (Id. at ¶ 92).  In response, Panasonic provided a statement, confirming that the problem was caused by an "automatic control which adjusts an internal driving voltage at predetermined intervals of operational hours . . . [and that] as a result of this automatic voltage adjustment, background brightness will increase from its initial value."  (Id. at ¶¶ 92, 118).  Plaintiffs contend that Panasonic's alleged statement is an admission of the Defect, which Panasonic had previously failed to disclose to consumers.  (Id. at ¶¶ 93, 94).

As described in more detail below, plaintiffs contend that they complained to Panasonic about the presence of the Defect within their first year of using the Televisions.  (Id. at ¶ 94).  Yet, Panasonic made no efforts to correct the Defect.  Rather, Panasonic continued to intentionally misrepresent that the Televisions were "functioning properly and as designed" so that plaintiffs and the class members would rely on such misrepresentations and omissions to purchase the defective Televisions to the exclusion of competitors' brands.  (Id. at ¶¶ 90, 95, 118, 119).

4

The Defect and Panasonic's unlawful acts and omissions have deprived plaintiffs and the proposed class members of the benefit of their bargains within the first year of the Televisions' useful life.  (Id. at ¶ 96).  Plaintiffs, on behalf of themselves and as proposed class representatives, seek "damages and/or refunds from Panasonic" for violations of the  New Jersey Consumer Fraud Act ("NJCFA"), N.J. STAT. ANN. § 56:8-1 et seq.; other states' consumer protection acts; and express and implied warranties as well as for unjust enrichment. (Id. at ¶ 104).  Plaintiffs allege that, at the time of the June 2010 filing of the Amended Complaint, they all still owned the Televisions, and all plaintiffs, except Hughes, expressly allege that they still continued to use the Televisions. (Id. at ¶¶ 31, 43, 54, 61, 64, 73).

**B.    The Named Plaintiffs**

1.    Shane Hughes

Hughes resides in Alabama. (Id. at ¶ 10).  On June 17, 2009, Hughes purchased one of the Televisions (model number TC-P50G10) for use in his home.  (Id. at ¶¶ 31-32).

Before purchasing the Television, Hughes researched Panasonic plasma televisions and the particular model that he eventually purchased.  (Id. at ¶ 33).  Hughes viewed Panasonic's internet website, www.panasonic.com, and tech product review materials both on the internet and in print. (Id. at ¶¶ 33, 34)  On its website, Panasonic stated  that the CNET website gave the Televisions a "4.5 out of 5" rating.  (Id.)  Panasonic's website further represented that the Televisions were designed to "achieve next-generation black reproduction."  (Id.)  Its website also represented, "[w]hen you're watching movies, VIERA renders images just the way the director intended, even in scenes where it's difficult to achieve a proper balance of light and dark." (Id.)  Panasonic marketed the Televisions as having "industry leading black levels and native contrast ratios."  (Id.

at ¶ 34).

Hughes also visited a Best Buy store in Alabama, where he observed the Televisions' "significantly greater black levels than televisions manufactured by [Panasonic's] competitors," such as Samsung and Sony. (Id. at ¶ 36). In June 2009, Hughes purchased the Television from the internet website, www.amazon.com. (Id. at ¶ 37).

Hughes used the Television at his residence until July 2009, when he observed that the "black level" increased dramatically. (Id. at ¶ 38). He performed "measurements" on the Television, which revealed that "said measurements had degraded . . . after less than 400 hours" of use. (Id.)

In September 2009, three months after purchasing the Television, Hughes contacted Panasonic to repair his television. (Id. at ¶ 39). Panasonic documented Hughes' complaint and notified him that Panasonic would address the problem. (Id.) At the time, Panasonic's express Limited Warranty (hereinafter referred to as the "Limited Warranty") was in effect. (Id. at ¶ 41).

The Limited Warranty states, in relevant part:

> If your product does not work properly because of a defect in materials or workmanship, Panasonic . . . will, for the length of the period indicated on the chart below, which starts with the date of original purchase ("Limited Warranty period"), at its option either (a) repair your product with new or refurbished parts, or (b) replace it with a new or a refurbished product."[3]

---

[3] In support of its motion to dismiss, Panasonic attached three versions of Panasonic's limited warranty that were issued to consumers in the United States in connection with sales of the Televisions, models TC-P50G10, TC-P58V-10, TH42PX80U, TH50PX80U and TH-42-PZ80U, respectively. (James Orr Cert., dated July 30, 2010, at ¶¶ 3-5 and Exhs. B-D). The three versions contain minor differences. Significantly, under each version, only defects in "materials or workmanship," are covered. (Id.) Additionally, as it relates to the instant motion to dismiss, the Limited Warranty covers defects only for a one year period, beginning from the date of purchase. (Id.) Hughes purchased model TC-P50G10, and thus his Television is governed by the terms detailed in the "Panasonic Color Television Limited Warranty." (Id. at ¶ 3 and Exh. B).

(James Orr Cert., at ¶¶ 3-5 and Exhs. B-D).  It also states, in relevant part:

> **THERE ARE NO EXPRESS WARRANTIES EXCEPT AS LISTED UNDER 'LIMITED WARRANTY COVERAGE.'**
>
> * * *
>
> **ALL EXPRESS AND IMPLIED WARRANTIES, INCLUDING THE LIMITED WARRANTY OF MERCHANTABILITY, ARE LIMITED TO THE PERIOD OF THE LIMITED WARRANTY.**

(Id.)

After two months passed without Panasonic having addressed Hughes' complaint, he again contacted the company.  (Id. at ¶¶ 39-40).  Panasonic informed Hughes that his complaint had been forwarded to the "display engineering department."  (Id.)  At the time plaintiffs filed their Amended Complaint, Panasonic had not yet responded to his complaint or repaired the Defect.  (Id.)

### 2.   Franklin Donahue

Donahue resides in California.  (Id. at ¶ 11).  On December 31, 2009, Donahue purchased one of the Televisions (model number TC-P58V-10) for use in his home.  (Id. at ¶¶ 42, 43).

Before purchasing the Television, Donahue researched Panasonic plasma televisions and the particular model that he eventually purchased.  (Id. at ¶ 44).  Like Hughes, Donahue viewed Panasonic's website and tech product review websites, such as the CNET website.  (Id. at ¶¶ 44-45).  Furthermore, on Panasonic's website, Donahue read similar representations about the Televisions having "industry leading black levels and native contrast ratios," resulting in  more accurate and detailed colors in the Television's picture quality.  (Id. at ¶ 44).

---

As discussed more fully herein, the Court considers the three versions of Panasonic's Limited Warranty in analyzing Panasonic's motion to dismiss because the Amended Complaint explicitly refers to and relies on such documents.

Donahue visited a Best Buy store in Thousand Oaks, California where he observed the Televisions' "significantly greater black levels than other televisions manufactured by [Panasonic's] competitors." (Id. at ¶ 46).  On an undisclosed date, Donahue purchased the Television from U.S. Appliance's internet website, www.us-appliance.com.  (Id. at ¶ 47).

When Donahue first installed the Television, he used a calibrator to test it, and did not notice any problems with the picture quality.  (Id. at ¶ 48).  After two months of use, Donahue read complaints about the Televisions on the internet.  (Id. at ¶ 49).  He then re-tested his Television, which recorded levels that were only slightly higher than on the date of purchase.  (Id.)  Donahue again did not notice any difference in the picture quality.  (Id.)  At that time, he had been using the Television for 400 hours. (Id.)

After two more months of use, in April 2010, Donahue re-tested the picture quality.  (Id. at ¶ 50).  The recorded levels were significantly higher than at the time of purchase.  (Id.)  He also plainly observed that the picture quality had degraded after 800 hours of use.  (Id.)

On an unspecified date, Donahue contacted Panasonic about the Defect, who has refused to make any repairs.  (Id. at ¶ 51).  At the time, Panasonic's Limited Warranty was in effect.[4]  (Id. at ¶ 52).

      3.   Brad Stowers

Stowers resides in West Virginia.  (Id. at ¶ 12).  On December 17, 2008, Stowers purchased one of the Televisions (model number TH42PX80U) for use in his home.  (Id. at ¶¶ 53, 54).

Before purchasing the Television, Stowers researched Panasonic plasma televisions and the

---

[4] Donahue purchased model TC-P58V-10, and thus his Television is governed by the terms detailed in the  "Panasonic Plasma Television Limited Warranty."  (Id. at ¶ 4 and Exh. C).

particular model that he eventually purchased.  (Id. at ¶ 55).  Like Hughes and Donahue, Stowers viewed tech product review websites, including the CNET website.  (Id. at ¶¶ 55, 58).  Stowers read the following review on the CNET website:  "Relatively inexpensive; produces a deep shade of black; accurate initial color temperature. . . ."  (Id. at ¶ 55).  Stowers alleges that Panasonic's website contains representations about the Televisions' "incredible black reproduction . . . [that] results in impressive contrast and beautiful, natural colors. . . . For color that's as rich and bold as life itself, look to a Panasonic Plasma TV."  (Id. at ¶ 56).  However, unlike Hughes and Donahue, Stowers does not expressly allege that he read this representation on Panasonic's website.  (See id. at ¶¶ 56, 57).

Stowers visited Best Buy and Sears stores in Barboursville, West Virginia where he observed the Televisions' "significantly greater black levels, contrast and picture quality than other televisions manufactured by [Panasonic's] competitors."  (Id. at ¶ 59).  In December 2008, Stowers purchased the Television from the internet website, www.Sears.com.  (Id. at ¶ 60).  He took delivery of the Television from the Sears retail store in Barboursville, West Virginia.  (Id.)

At the time of purchase, Stowers noticed the Television's "superior picture quality."  (Id. at ¶ 62).  However, after using the Television for an unspecified period of time, he noticed problems with the picture quality.  (Id. at ¶ 61).  Specifically, he observed a "worsening of black level and contrast."  Id.  At some point, Stowers consulted the CNET website, whereupon he learned of the problems concerning the Televisions' voltage adjustments and degrading picture quality.  (Id.)

The Amended Complaint does not allege whether he ever contacted Panasonic about the Defect.  (See generally Am. Compl.)   It also fails to allege whether Panasonic's Limited Warranty

9

was in effect when the Defect surfaced.[5]  (See id.)

        4.    Frank Newell

Newell resides in New Jersey.  (Id. at ¶¶ 13, 64).  In February 2009, Newell purchased one of the Televisions (model number TH50PX80U) for use in his home.  (Id. at ¶¶ 63, 64).

Before purchasing the Television, Newell researched Panasonic plasma televisions and the particular model that he eventually purchased.  (Id. at ¶ 66).  His research consisted of reading the Consumer Reports Magazine.  (Id. at ¶ 65).  Consumer Reports recommended the Televisions.  (Id.)

Newell visited a Boscov's store in Deptford, New Jersey where he observed the Televisions' "significantly greater black levels, contrast and picture quality than other televisions manufactured by [Panasonic's] competitors."  (Id.  at ¶ 67).  In February 2009, Newell purchased the Television from Boscov's.  (Id. at ¶ 68).

Newell did not immediately install or use the Television after his purchase.  (Id. at ¶ 69).  Instead, he waited two months, until May 2009, to install and use the Television.  (Id.)  From the time he began using the Television until the filing date of the Amended Complaint in June 2010, Newell estimates that his Television was in use for six hours per day from Monday through Friday.  (Id.)  He further estimates that the Television was on "all day long" on the weekends.  (Id.)

At the time of installation, Newell noticed the Television's "superior picture quality."  (Id. at ¶ 70).  However, after using the Television for an unspecified period of time, Newell noticed problems with the picture quality.  (Id. at ¶ 71).  Specifically, he observed a "graying of the blacks" a fuzziness of images on the screen.  (Id.)

_____

[5] Stowers purchased model TH42PX80U, and thus his Television is governed by the terms detailed in the "Panasonic Color Television Limited Warranty."  (Orr Cert., at ¶ 5 and Exh. D).

The Amended Complaint is silent as to whether Newell ever contacted Panasonic about the Defect.  (See generally Am. Compl.)  It also contains no allegations that Panasonic's Limited Warranty was in effect when the Defect first surfaced.[6]  (See id.)

     5.    Eric Hagans

Hagans resides in New Jersey.  (Id. at ¶¶ 13, 73).  In February 2009, Hagans purchased one of the Televisions (model number TH-42-PZ80U) for himself and his girlfriend, Tracey Daleus ("Daleus"), in their Cherry Hill, New Jersey home.  (Id. at ¶¶ 72, 77).

Before purchasing the Television, Hagans researched Panasonic plasma televisions and the particular model that he eventually purchased from his home.  (Id. at ¶ 55).  Like Hughes, Donahue, and Stowers, Hagans viewed tech product review websites, such as the CNET website.  (Id. at ¶ 74). Hagans also visited several New Jersey based retail stores that displayed the Televisions.  (Id.)  Like the other plaintiffs, Hagans noticed that the Televisions displayed a superior picture quality.  (Id. at ¶ 75).  The Sears salespeople recommended the Television model that he eventually purchased based on the picture quality and its excellent reviews from the consumer electronic industry.  (Id. at ¶ 76).

In February 2009, Hagans purchased the Television from the Sears store.  (Id. at ¶ 77).  Like Newell, Hagans did not immediately install or use the Television after his purchase.  (Id. at ¶ 78). Rather, Hagans waited more than a month to use the Television.  (Id.)  When Hagans installed the Television, he noticed the excellent picture quality.  (Id.)  From the time they began using the Television until the filing date of the Amended Complaint, Hagans and Daleus estimate that they used the Television seven hours daily. (Id. at ¶ 79).

―――――――――――――

[6] Newell purchased model TH50PX80U, and thus his Television is governed by the terms detailed in the  "Panasonic Color Television Limited Warranty."  (Orr Cert., at ¶ 5 and Exh. D).

However, at some point in time, both Hagans and Daleus noticed degradation in the picture quality.  (Id. at ¶ 80).  They allege similar problems as the other plaintiffs.  (Id.)

Like Stowers and Newell, Hagans does not allege how long the Television was in use before the Defect surfaced.  Hagans also does not allege that he ever contacted Panasonic to report the Defect.  (See generally Am. Compl.)  Finally, Hagans fails to allege whether Panasonic's Limited Warranty was in effect at the time.[7]  (See id.)

### C.    Procedural History

On February 10, 2010, plaintiff Hughes filed this putative class action before this Court.  He asserted claims for: (1) violations of the NJCFA; (2) breach of express and implied warranty under New Jersey common law; and (3) unjust enrichment under New Jersey common law.

On April 27, 2010, Panasonic filed a motion to dismiss the complaint for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), and for failure to plead with sufficient particularity, pursuant to FED. R. CIV. P. 9(b), along with a motion to strike the class action allegations pursuant to FED. R. CIV. P. 12(f) and 23(d)(1)(D).

On May 18, 2010, Hughes filed a motion to amend the complaint to add Donahue, Stowers, Newell, and Hagans as class representatives, to plead additional facts, and alternatively to assert violations of the consumer protection statutes of New Jersey, California, Alabama, and West Virginia.[8]  Under Fed. R. Civ. P. 15(a), plaintiffs had an automatic right to amend the complaint

---

[7] Hagans purchased model TH-42-PZ80U, and thus his Television is governed by the terms detailed in the "Panasonic Color Television Limited Warranty."  (Orr Cert., at ¶ 5 and Exh. D).

[8] If plaintiffs cannot successfully plead a national class action claim under the NJCFA (Count I), they have alternatively pled statewide class actions in Count II under the NJCFA; the Alabama Deceptive Trade Practices Act ("ADTPA"), ALA. CODE §§ 8-19-1 et seq.; the West

once before a responsive pleading to the original complaint was filed.

Accordingly, on June 4, 2010, Judge Arleo issued an Order, dismissing the motion to amend as moot and allowing plaintiffs to file the amended complaint. The Order further dismissed without prejudice Panasonic's then pending motions to dismiss and to strike, and also directed Panasonic to file an answer or otherwise re-file the motion to dismiss and/or motion to strike addressing all claims set forth in the Amended Complaint. Panasonic re-filed the instant motions as directed.

## II.    DISCUSSION

### A.    Legal Standard Under FED. R. CIV. P. 12(b)(6)

The adequacy of pleadings is governed by FED. R. CIV. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)).

In considering a motion to dismiss under FED. R. CIV. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips, 515 F.3d at 231 (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d

---

Virginia Consumer Credit and Protections Act ("WVCCPA"), W. VA. CODE §§ 46A-6-101 et seq.; the California Unfair Competition Law ("CUCL"), Cal. Bus. & Prof. Code §§ 17200-17210; and the California Consumers Legal Remedies Act ("CCLRA"), CAL. CIV. CODE §§ 1750-1784.

Cir. 2002)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 555).  As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'

Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556-57) (internal citations omitted).

Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950 (citation omitted).  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," id., the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2).  Id.

As a general rule, a district court deciding a motion to dismiss may consider only the contents of the pleadings.  Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) (internal citation omitted).  However, there exists an exception to that general rule in that "'[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim.'" Cooper v. Samsung Electronics Am., Inc., 374 F. App'x 250, 253 n.3 (3d Cir. Mar. 30, 2010) (quoting Pryor, 288 F.3d at 560).

Here, plaintiffs' Amended Complaint explicitly refers to the Limited Warranties which cover their respective televisions. Moreover, their breach of warranty claims are predicated on the terms and conditions of these Limited Warranties. Accordingly, since Panasonic attached the Limited Warranties to its motion to dismiss, this Court may consider these documents in ruling on the motion to dismiss under Rule 12(b)(6).

Panasonic raises several arguments in support of dismissing plaintiffs' claims. First, plaintiffs have not adequately plead consumer fraud claims irrespective of which state's consumer fraud law applies because they have not alleged facts to support the unlawful conduct and ascertainable loss elements.[9] Second, plaintiffs have not plead their consumer fraud claims consistent with the heightened pleading standard under Rule 9(b). Third, under a choice of law analysis, out of state plaintiffs Hughes, Donahue, and Stowers' NJCFA claims must be dismissed. Fourth, irrespective of a choice of law analysis, plaintiffs' express and implied breach of warranty claims and unjust enrichment claims fail to state claims under the laws of each plaintiff's home state.

In opposition, plaintiffs contend that their consumer fraud claims are brought only under the NJCFA, which they claim have been adequately plead under the statute and consistent with Rule 9(b). Further, plaintiffs submit that the non-New Jersey plaintiffs may plead causes of action under the NJCFA because New Jersey has the most significant relationship to the facts of this case. Plaintiffs also claim that their express breach of warranty claims are sufficiently plead under New

---

[9] Panasonic also contends that the NJCFA claims fail because the allegations amount to mere consumer dissatisfaction, and thus are insufficient to state a claim. Based on this Court's review of the Amended Complaint, and accepting all allegations as true, the Court cannot find that the allegations are mere customer dissatisfaction. Yet, as discussed in detail herein, the Court finds that independent reasons exist to dismiss the NJCFA claims (Counts I and part of Count II, at ¶ 123) without prejudice.

Jersey law because their claims are based on a manufacturing, as well as a design, defect. Furthermore, plaintiffs contend that their implied warranty and unjust enrichment claims are sufficiently plead under New Jersey law, which governs plaintiffs' claims. Finally, plaintiffs argue it is premature to decide the choice of law analysis at the pleadings stage, and thus New Jersey law should be applied at this juncture. However, even if the Court now undertook a choice of law analysis, such a decision would yield applying New Jersey law to plaintiffs' consumer fraud and unjust enrichment claims.[10]

### B.    Choice of Law Analysis

Panasonic contends that the Court may properly undertake a choice of law analysis at the motion to dismiss stage. According to Panasonic, in undertaking this analysis, the Court should determine that the consumer fraud laws of the non-New Jersey plaintiffs' home states, rather than the NJCFA, apply to their individual claims. In contrast, plaintiffs contend that it is improper for this Court to engage in a choice of law analysis at the pleadings stage. In support of their argument, plaintiffs cite this Court's decision in Berry v. Mega Brands Inc., 2009 WL 233508, at * 4 (D.N.J. Jan. 29, 2009), wherein this Court held that it could not make such a "determination at the pleading stage because it requires a fact-intensive analysis." Id. (citing Taylor v. JVC Americas Corp., 2008 WL 2242451, at *7 (D.N.J. May 30, 2008)). Plaintiffs, however, interpret too broadly the application of this Court's holding in Berry.

First, at the time of this Court's decision in Berry, New Jersey had applied the "government interest" test for determining which state's laws should apply to tort claims. See Agostino v. Quest

---

[10] It is unclear whether plaintiffs take this same position as to their breach of warranty claims. This ambiguity, however, is of no moment as these claims cannot survive under any of the possibly applicable state laws.

Diagnostics, 256 F.R.D. 437, 460-61 (D.N.J. 2009).  Thus, this Court viewed the choice of law

determination in the context of the "government interest" analysis.  However, "[i]n November 2008,

the New Jersey Supreme Court adopted the 'most significant relationship' test, as found in the

Restatement (Second) of Conflicts of Laws."  Cooper, 374 F. App'x at 254 (citing P.V. v. Camp

Jaycee, 197 N.J. 132 (2008)).  "This test 'embodies all of the elements of the governmental interest

test plus a series of other factors deemed worthy of consideration.'"  Id. at 374 F. App'x at 254

(quoting Camp Jaycee, 197 N.J. at 459 n.4).

 Second, in Berry, this Court did not conclude that there are no set of facts where the Court

could appropriately undertake a choice of law analysis at the pleadings stage.  Rather, the Court held

that it could not reach the choice of law analysis on the record before it.  Berry, 2009 WL 233508,

at * 4.  Finally, after Berry, the Third Circuit in Cooper rejected an appellant consumer's argument

that the district court improperly resolved the choice of law determination concerning his "statutory

consumer fraud act claim at the motion to dismiss stage, rather than wait until the class certification

stage."  Cooper, 374 F. App'x at 255 n.5.

 Notwithstanding these clarifications, the Court, here, need not determine whether it is

appropriate to engage in a choice of law analysis at the pleadings stage because, as detailed below,

each of the plaintiffs' claims fails as a matter of law under any of the possibly applicable laws.  See

In re Toshiba Am. HD DVD Mktg. and Sales Practices Litig., 2009 WL 2940081, at * 7-18 (D.N.J.

Sept. 11, 2009) (dismissing all of plaintiffs' statutory and common law claims, including their

NJCFA, breach of warranty and unjust enrichment claims on the merits without reaching choice of

law analysis).  See also Arcand v. Brothers Int'l Corp., 673 F. Supp. 2d 282, 295-96 (D.N.J. 2009)

(finding that choice-of-law analysis could not be undertaken based on the record before the court,

but recognizing that it may be appropriate to determine choice of law on a motion to dismiss in other cases).

### C.      Count One: Violation of the NJCFA

The NJCFA was enacted to protect consumers against acts of deception and fraud, including those committed in good faith.  Ji v. Palmer, 333 N.J. Super. 451, 461 (N.J. App. Div. 2007); see also N.J. STAT. ANN. § 56:8-2.  Claims under the NJCFA require a plaintiff to allege the following three elements: "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss."  N.J. Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 12-13 (App. Div.), cert. denied, 178 N.J. 249 (2003).

Panasonic alleges that the Amended Complaint fails to sufficiently plead unlawful conduct and ascertainable loss and does not satisfy the particularity pleading requirements under FED. R. CIV. P. 9(b).  Rule 9(b) imposes a heightened pleading requirement concerning allegations of fraud, including NJCFA claims, over and above that required by Rule 8(a).  See In re Toshiba Am., 2009 WL 2940081, at *8 (citing Maniscalco v. Brother Int'l Corp. (USA), 627 F. Supp.2d 494, 500 (D.N.J. 2009)) (internal citations omitted).

Rule 9(b) states "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).  Plaintiffs may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004) (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)).  "Plaintiffs also must allege who made a

18

misrepresentation to whom and the general content of the misrepresentation." Id.  Because certain aspects of an alleged fraud may have been concealed by a defendant, courts apply Rule 9(b) "with some flexibility." Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998).

> As the Third Circuit has explained:

> > While we have acknowledged the stringency of Rule 9(b)'s pleading requirements, we have also stated that, in applying Rule 9(b), courts should be "sensitive" to situations in which "sophisticated defrauders" may "successfully conceal the details of their fraud." Where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed. Nevertheless, even when the defendant retains control over the flow of information, "boilerplate and conclusory allegations will not suffice. Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible."

In re Rockefeller Ctr. Properties, Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir.1997)) (internal citations omitted).

Although Panasonic disputes plaintiffs' factual allegations, Panasonic argues, among other things, that even if the allegations are true, plaintiffs' NJCFA claim fails because plaintiffs have not pointed to any actionable unlawful conduct by Panasonic.  According to Panasonic, plaintiffs have not set forth any specific advertisements, marketing materials, warranties, or product guides that plaintiffs viewed; where and from whom at Panasonic did plaintiffs received any such information; or how precisely, plaintiffs were injured by any such representations.

### 1.   Unlawful Conduct

Conduct prohibited by the NJCFA (and hence "unlawful") includes:

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false promise, misrepresentation, or the knowing concealment, suppression, or

> omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been mislead, deceived or damaged thereby....

N.J. STAT. ANN. § 56:8-2.

The NJCFA recognizes three general categories of unlawful conduct: (1) affirmative acts, *i.e.*, misrepresentations; (2) omissions; and (3) regulatory violations. See Solo v. Bed Bath & Beyond, Inc., 2007 WL 1237825, at *2 (D.N.J. Apr. 26, 2007); Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994). The common denominator underlying all types of unlawful conduct is "'[its] capacity to mislead.'" Arcand, 673 F. Supp.2d at 296 (quoting Cox, 138 N.J. at 17 (internal citations omitted)). Significantly, the unlawful conduct must be made "'in connection' with the sale or advertisement of a product or service." Arcand, 673 F. Supp.2d at 296-97 (quoting Castro v. NYT Television, 370 N.J. Super. 282, 294 (N.J. Super. App. Div. 2004)).

However, as they relate to the instant motion to dismiss, differences exist among allegations of affirmative acts and omissions. "When the alleged consumer-fraud violation consists of an affirmative act, intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act." Cox, 138 N.J. at 17 (internal citation omitted). Intent is not an element of proof for affirmative acts because the law imposes strict liability for NJCFA violations. Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 556 (2009).

On the other hand, "when the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." Cox, 138 N.J. at 18. "Implicit in the showing of an omission is the underlying duty on the part of the defendant to disclose what he concealed to induce the purchase." Arcand, 673 F. Supp.2d at 297.

20

A plaintiff need not establish reliance for NJCFA liability; rather, the Act establishes prohibited conduct as actionable even if no plaintiff "'has in fact been misled, deceived, or damaged thereby.'" Union Ink Co. v. AT&T Wireless, 352 N.J. Super. 617 (N.J. Super. App. Div. 2002).  See  N.J. Stat. Ann. § 56:8-2.

Here, plaintiffs allege that Panasonic engaged in affirmative acts and omissions.[11]

      a.    *Affirmative Acts*

Plaintiffs allege the following affirmative acts by Panasonic: (1) marketing that Panasonic's Televisions featured industry leading black levels and contrast ratios (Am. Compl., at ¶¶ 5, 88); (2) advertising that the Televisions reached the point of half-brightness only after 100,000 hours of use, (id. at ¶ 8); (3) representing on Panasonic's website that the Televisions show "images just the way the director intended," (id. at ¶ 88);  (4) representing that the Televisions were functioning properly and as designed even after the Defect first surfaced, (id. at ¶ 95); and (5) displaying Television models in retail stores as a means of falsely representing that the Televisions' image quality was superior, and would last for at least 100,000 hours of use.  (Id. at ¶¶ 6, 7, 36, 46, 59, 67, 74-76).  See Opp. bf. at 18.

In response, Panasonic contends that its alleged statements about the Televisions' "industry leading black levels and contrast ratios" as well as the Televisions' "black reproduction," are mere

---

[11] Plaintiffs assert that Panasonic committed actionable "unconscionable commercial practices," misrepresentations, affirmative acts and omissions. Unconscionable commercial practices and misrepresentations are deemed affirmative acts, and thus  fall into one category of actionable unlawful conduct, while omissions fall into a second separate category.  See  Chattin v. Cape May Greene, Inc., 243 N.J. Super. 590, 598 (N.J. Super. App. Div. 1990), aff'd per curiam, 124 N.J. 520 (1991).  Thus, the Court will analyze together all alleged affirmative acts, including those that plaintiffs characterize separately as "misrepresentations" and "unconscionable commercial practices."

puffery.  Panasonic further contends that its representations about the Television technology's ability to render images "the way the director intended" and producing "breathtaking" and "vivid" colors are not actionable as affirmative acts but rather are mere puffery.

Here, the Court finds that Panasonic's alleged misrepresentations about the Televisions' "industry leading" technology and features, which create superior image and color quality, are not "statements of fact," but rather subjective expressions of opinion.   Indeed, such statements of product superiority are routinely made by companies in advertising to gain a competitive advantage in the industry.   "The NJCFA distinguishes between actionable misrepresentations of fact and 'puffery.'" In re Toshiba Am., 2009 WL 2940081, at * 9 (citing Rodio v. Smith, 123 N.J. 345, 352 (1991) (the slogan "You're in good hands with Allstate" was "nothing more than puffery" and as such was not "a deception, false promise, misrepresentation, or any other unlawful practice within the ambit of the Consumer Fraud Act"); see New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 13-14 (N.J. Super. App. Div. 2003) (finding that defendant's advertisements which employed phrases as "you . . . can lead a normal nearly symptom-free life again" were "not statements of fact, but are merely expressions in the nature of puffery and thus are not actionable" under the NJCFA).   Thus, these alleged statements attributable to Panasonic on its website are mere expressions of puffery, and are thus not actionable as affirmative acts under the NJCFA.

The remaining misrepresentations that the Televisions do not reach the point of half-brightness until after 100,000 hours of use and that they were functioning properly even after the Defect was uncovered, may be statements of fact rather than mere puffery.  However, plaintiffs do not assert sufficient allegations of fact to satisfy the requisite level of adequate pleading under Rule 9(b) or by Iqbal, (See Am. Compl., at ¶¶ 8, 95).

As to the misrepresentation about half-brightness, the Amended Complaint does not allege the "date, place or time" of this misrepresentation or otherwise inject some precision and "some measure of substantiation" into plaintiffs' allegations of fraud. See Lum, 361 F.3d at 224 (internal quotations omitted); see, e.g., Dewey v. Volkswagen AG, 558 F. Supp.2d 505, 526 (D.N.J. 2008) (dismissing misrepresentation based NJCFA claim because "[w]ith regard to the statements on Volkswagen's website and in the 2002 Passat owner's manual, the Dewey Plaintiffs do not allege when the statements were made or at what point - if ever - each Plaintiff was exposed to one or more of the statements"); Torres-Hernandez v. CVT Prepaid Solutions, 2008 WL 5381227, at *6 (D.N.J. Dec. 17, 2008) (finding that the defendant's alleged fraudulent misrepresentations fail to supply "the what, where and when," and thus, they are insufficient to sustain the NJCFA claim). Plaintiffs merely allege that Panasonic made such a statement in its advertising, knowing that such a misrepresentation would be favorably received by industry experts and consumers. (Am. Compl., at ¶ 8).

While plaintiffs can not be expected to plead facts solely within Panasonic's knowledge or control, plaintiffs should be able to allege the specific advertisements, marketing materials, warranties or product guides that they each reviewed, which included this misrepresentation and when it was so advertised. Indeed, Hughes and Donahue, who are the only two plaintiffs to have allegedly reviewed Panasonic's website, do not specifically allege that they even read this particular misrepresentation that the superior picture quality would last through 100,000 hours of use. As to plaintiffs Newell, Stowers, and Hagans, none of them even allege that they reviewed Panasonic's website before purchasing their Televisions. Rather, they personally viewed Panasonic television models displayed in retail stores or read third-party websites or printed materials containing

technology product reviews.  Thus, these plaintiffs do not plead factual content that allows this Court to draw any reasonable inference that Panasonic made this misrepresentation to them, and therefore is liable for consumer fraud under the NJCFA.

Panasonic's alleged misrepresentation that the Televisions were functioning properly after the Defect was revealed suffers from the same flaw.  This allegation is general in nature, failing to provide any requisite particularity as to time, place, or date.  The Amended Complaint alleges that, in a statement, Panasonic admitted that there was a Defect, which it had failed previously to disclose to consumers, (id. at ¶¶ 92, 93, 94, 118).  Yet, plaintiffs fail to allege when Panasonic made such a statement, let alone whether Panasonic issued the statement before or after plaintiffs purchased the Televisions and lodged Hughes' and Donahue's respective complaints to Panasonic.[12]  Accordingly, although the Amended Complaint sufficiently describes the nature of the Defect, the alleged affirmative acts fail to give Panasonic notice of the precise fraudulent conduct which with it is charged.  See In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999) (detailing the heightened pleading requirement under Rule 9(b)).

Finally, when read together, these alleged affirmative acts demonstrate, at most, a mere possibility of Panasonic's misconduct , and thus they "stop[] short of the line between possibility and plausibility of 'entitlement to relief' under the NJCFA.  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556-57).  In short, these two allegations alone are insufficient to be considered actionable

---

[12] In its Moving brief, Panasonic states that it published its response to CNET, the tech product review publication on February 4, 2010.  The Court notes that, based on the allegations in the Amended Complaint, it appears that this alleged admission was made after all plaintiffs purchased their televisions.  Yet, as this purported statement of fact is not contained in the Amended Complaint, the Court will not consider it in analyzing the merits of plaintiffs' claims.  See Township of Secaucus, 889 F. Supp. at 791.

unlawful conduct under the NJCFA.

      b.   *Omissions*

Plaintiffs allege that Panasonic intentionally failed to disclose the following material facts to potential consumers and industry experts and reviewers: (1) the Televisions are designed to rapidly degrade, (id. at ¶¶ 96, 118); (2) the superior images displayed on new Television models would rapidly degrade, (id. at ¶¶ 6, 7); (3) the Televisions would exhibit increased minimum luminance levels after shortly being used, (id. at ¶ 90); (4) consumers had filed multiple complaints that picture quality deteriorates during the first year of the Television's useful life, (id. at ¶ 94); and (5) these omissions would result in an increase in sales of Panasonic's Televisions.  (Id. at ¶¶ 90, 101); (see Opp. bf. at 13).

As set forth above, omissions require a showing of intent. Here, even accepting the allegations of omissions in the Amended Complaint as true, the Court finds that plaintiffs fail to allege sufficient facts to raise any plausible inference that Panasonic knowingly concealed the Defect with the intent that consumers and industry experts would rely upon the concealment.  Indeed, throughout the Amended Complaint, it is alleged that Panasonic knew "or should have known" of the Defect, but provides no additional facts explaining how or why Panasonic had knowledge of the Defect to satisfy Iqbal.  Such allegations of intentionally failing to disclose the Defect are merely conclusory assertions.

 Additionally, such omissions fail to satisfy the Rule 9(b) heightened pleading standard. Plaintiffs do not allege when such omissions occurred, let alone whether they occurred before or after plaintiffs purchased their Televisions, respectively, in 2008 and 2009.

Similarly, the Amended Complaint alleges that Panasonic received, but ignored, complaints

from plaintiff Hughes in September 2009 and plaintiff Donahue on an unspecified date.  Yet, there are no specific allegations of an intent to conceal the Defect after receiving these two complaints that create more than a mere possibility of Panasonic's misconduct, and thus, liability under the NJCFA. Indeed, all of the plaintiffs, except for Donahue, purchased their Televisions before Hughes complained to Panasonic in September 2009.   Moreover, the Amended Complaint fails to specifically allege the date on which Panasonic admitted the Defect existed and how that admission establishes Panasonic's intent to design defective Televisions rather than mere negligence.  Finally, any allegations that Panasonic failed to inform consumers, like plaintiffs, about the Defect are speculative because the Amended Complaint contains allegations that the Televisions still function, and plaintiffs are still using them.

Thus, the alleged omissions do not meet the standards under Rule 9(b) or under Iqbal.  See, e.g., Glauberzon v. Pella Corp., 2011 WL 1337509, at *9 (D.N.J. Apr. 7, 2011) (finding that allegations of omissions to support NJCFA claim do not meet Rule 9(b) pleading standard because "Plaintiffs do not identify who at Pella was aware of the . . . defect, when or how they learned of such defect and/or when or how the decision was made to conceal the defect from its customers..."); In re Toshiba Am., 2009 WL 2940081, at *11-13 (the plaintiffs do not plead sufficient facts to support their allegations of omissions by Toshiba); Torres-Hernandez, 2008 WL 5381227, at *6 (finding that plaintiffs alleged only general allegations of concealment in terms of defendant's marketing materials, and thus, the failure to inject any "details as to the character of the marketing and advertising materials" is fatal to the NJCFA claim); but see In re Philips/Magnavox Television Litig., 2010 WL 3522787, at *7 (D.N.J. Sept. 1, 2010) (finding that complaint sufficiently alleged the "precise nature of the alleged defect, how and why Defendants had knowledge of the defect, and

26

the individual transactions of each Plaintiff").

In short, accepting the allegations as true, this Court is satisfied that the Amended Complaint does not include sufficient allegations of unlawful conduct by Panasonic as required by the NJCFA. Accordingly, plaintiffs fail to state a claim under the NJCFA, and Count One of the Amended Complaint will be dismissed without prejudice. Plaintiffs have thirty days to re-plead their NJCFA claim.

### 2.    Ascertainable Loss

Even assuming plaintiffs sufficiently allege the "unlawful conduct" element under the NJCFA, the Court concludes that the Amended Complaint does not satisfy the pleading requirements of Iqbal or Rule 9(b) as to the "ascertainable loss" element to support a NJCFA claim.[13] "[A]scertainable loss[,] . . . has been broadly defined as embracing more than a monetary loss. An ascertainable loss occurs when a consumer receives less than what was promised." Union Ink Co., Inc. v. AT & T Corp., 352 N.J. Super. 617, 646 (N.J. Super. App. Div. 2002); Miller v. Am. Family Publishers, 284 N.J. Super. 67, 91 (N.J. Super. Ch. Div. 1995) (to prove "ascertainable loss" under the NJCFA, plaintiffs need only establish they "received something less than, and different from, what they reasonably expected in view of defendant's presentations").

Yet, a "plaintiff must suffer a definite, certain and measurable loss, rather than one that is merely theoretical." Bosland, 197 N.J. at 558 (citing Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 238 (2005)). "'The certainty implicit in the concept of an 'ascertainable loss' is that it is quantifiable or measurable.'" Bosland, 197 N.J. at 558 (quoting Thiedemann, 183 N.J. at 238).

---

[13] As the parties do not address "causation", the final element to establish a claim under the NJCFA, the Court does not reach the merits of whether the allegations in the Amended Complaint sufficiently plead causation.

The New Jersey Supreme Court has not "always equated an ascertainable loss with one that is demonstrated by an immediate, out-of-pocket expense suffered by the consumer." Id. Indeed, the NJCFA "does not demand that a plaintiff necessarily point to an actually suffered loss or to an incurred loss, but only to one that is 'ascertainable.'" Id. at 559. In cases involving fraudulent misrepresentations, as here, "'either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle.'" Solo, 2007 WL 1237825, at *3 (quoting Thiedemann, 183 N.J. at 248)).

Here, the Amended Complaint alleges "Panasonic has utilized its technology to engage in a sophisticated 'bait and switch,' in that what consumers thought they were purchasing is no longer what they received and what they are watching in their living rooms." (Am. Compl., at ¶ 9). In other words, the Television's picture quality drastically worsened after limited use. The Amended Complaint further alleges that Panasonic's actions have "deprived the Plaintiff[s] and the class members the benefit of their bargain." (Id. at ¶ 96).

These allegations do not sufficiently plead either an out-of pocket loss by plaintiffs or a showing of loss in value. Plaintiffs fail to allege how much they paid for their Televisions and how much other comparable Televisions manufactured by Panasonic's competitors cost at the time. Stated differently, plaintiffs fail to allege how much of a premium they claim to have paid for their Panasonic Televisions. See In re Toshiba Am., 2009 WL 2940081, at *13. Furthermore, in the Amended Complaint, all plaintiffs, except Hughes, affirmatively state that they continue to use the Televisions, thus minimizing any possible measurable loss.[14] (Am. Compl., ¶¶ 43, 54, 61, 64, 73).

---

[14] Hughes explicitly states only that he continues to own the Television. (Cite to Am. Compl., at ¶ 31).

Additionally, only plaintiffs Hughes and Donahue state that the deterioration in picture quality became present within a few months of use, and after 400 and 800 hours of use, respectively. (Id. at ¶¶ 38, 50).  On the other hand, Stowers, Newell, and Hagans do not allege when they began to notice the deterioration in picture quality or after how many hours of viewing.  Rather, they generally allege that they each noticed the degradation "[d]uring the course of [their respective] viewing."  (Id. at ¶¶ 61, 71, 80).  Finally, Stowers states that "[a]t the present" the picture quality on his "older Samsung DLP television's performance equals or exceeds the performance of his Panasonic television." (Id. at ¶ 62).  Accordingly, even accepting all of these allegations as true, together they do not sufficiently demonstrate an ascertainable loss that is "quantifiable or measurable" under Thiedemann.

Judge Chesler's analysis of the plaintiff's NJCFA claim in Solo, 2007 WL 1237825, at *3, is both instructive and persuasive.  In Solo, the plaintiff alleged that the defendant misrepresented the thread count of bed linens sold by the company in violation of the NJCFA.  According to the plaintiff, the bed sheets that he purchased for $149.99 had a thread count of approximately 492, and thus was significantly lower than the 1000 thread count as advertised by the defendant.  In alleging that the plaintiff and the proposed class suffered an ascertainable loss, plaintiff "broadly state[d]" that "they purchased lines that were of a lower quality and less valuable than the linens they were promised."  Solo, 2007 WL 1237825, at *3.

In determining that the plaintiff failed to adequately plead ascertainable loss, the court stated:

> Plaintiff fails to specifically allege that what he did receive[] was of lesser value than what was promised, *i.e.*, that the sheets he received were worth an amount of money less than the sheets he was promised, or that he experienced a measurable out-of-pocket loss because of his purchase.  Therefore, Plaintiff has failed to set forth

> either an out-of-pocket loss or a demonstration of loss in value
> sufficient to satisfy the ascertainable loss requirement.   <u>See</u>
> <u>Thiedemann</u>, 183 N.J. at 248.

<u>Solo</u>, 2007 WL 1237825, at *3; <u>see</u> <u>Arcand</u>, 673 F. Supp.2d at 301 (citing the ascertainable loss analysis in <u>Solo</u> as instructive in finding the plaintiffs failed to adequately plead ascertainable loss).

In light of the foregoing, the Court concludes that plaintiffs have failed to sufficiently plead an ascertainable loss, and thus their NJCFA claim (Count One) is dismissed.  However, since plaintiffs may be able to adequately plead ascertainable loss by alleging facts consistent with the Court's findings herein, the Court will afford plaintiffs thirty days to file their Amended Complaint and re-plead their NJCFA claim.

### D.   Count Two: Violations of Other State Consumer Protection Laws

Having dismissed plaintiffs' claims under the NJCFA (Count One), the Court next determines whether plaintiffs have sufficiently plead their alternative statewide class action claims in Count Two under the NJCFA; Alabama's ADTPA; West Virginia's WVCCPA; and California's CUCL and CCLRA.  The Court finds that plaintiffs have not so pled.

Panasonic argues that these alternative claims must be dismissed for the following reasons: (1) the omission based consumer fraud claims under the four states do not satisfy Rule 9(b) or 12(b)(6); (2) plaintiffs do not sufficiently allege ascertainable loss as required by all four states' consumer fraud statutes; and (3) Donahue's CCLRA claim and Stower's WVCCPA claim fail because they did not allege that they provided the statutory written notice of their complaints to Panasonic.  In opposition, plaintiffs merely assert in conclusory terms that they have sufficiently stated claims under New Jersey's, Alabama's, West Virginia's, and California's consumer protection laws without any discussion of whether they have met the elements of each individual state's laws.

(Opp. Bf. at 11).

This Court has carefully reviewed Count Two of the Amended Complaint.  In support of each plaintiff's individual statewide putative class action claims under the NJCFA; Alabama's ADTPA; California's CUCL and CCLRA; and West Virginia's WVCCPA, respectively, plaintiffs simply state that Panasonic's unfair business practices "relating to the research, design, manufacture, advertising, marketing, distributing and selling of the Televisions to consumers" violated these five consumer protection laws.  (Am. Compl., at ¶¶ 123-126).

Plaintiffs have failed to plead more than a "forumulaic recitation" of the elements of a cause of action under any of the state consumer protection laws cited in Count Two.  As such, the Court finds that such general allegations of statutory violations and conclusory citations to other states' statutes do not meet the most elementary pleading requirements under FED. R. CIV. P. 8.  Thus, the Court dismisses without prejudice Count Two.  See In re Toshiba Am., 2009 WL 2940081, at *14; see also In re Samsung DLP Television Class Action Litig., 2009 WL 3584352, at *4 (D.N.J. Oct. 27, 2009); Kalow & Springnut, LLP v. Commence Corp., 2009 WL 44748, at *4-5 (D.N.J. Jan. 6, 2009).  The Court will afford plaintiffs thirty days to file their Amended Complaint and re-plead their individuals statewide putative class actions claims under their respective state consumer protection laws in Count Two.

###    E.    Count Three: Breach of Express Warranty

Panasonic contends that plaintiffs' express breach of warranty claims fail to state claims under the laws of each plaintiff's home state for the following reasons: (1) the express warranty claims are based on a design defect, which is not covered by the express manufacturing warranties; (2) Panasonic's alleged marketing misrepresentations about the Televisions' superior picture quality

31

does not create a separate express warranty; (3) the claims sound in fraud, and thus fail for the same reasons as the consumer fraud claims under the Rule 9(b) heightened pleading standards; (4) based on the conflict of laws between New Jersey and California, Donahue's claim fails to plead reliance as an element under California's breach of express warranty law; and (4) the warranty claims of Stowers, Newell and Hagans are outside the governing warranty period.

As discussed below, the Court finds that plaintiffs' express warranty claims fail regardless of which possible states' law applies

### 1.   Panasonic's Written Limited Warranty

To plead a claim for breach of express warranty under New Jersey law, a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007).

Under California law, to establish a breach of express warranty claim, "the buyer must allege that the seller '(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff.'" Stearns v. Select Comfort Retail Corp., _ F. Supp. _, 2010 WL 2898284, at *10 (N.D. Cal. Jul. 21, 2010) (internal quotation omitted).

Under Alabama law, a breach of express warranty claim arises when "a manufacturer or seller of a product made '[a]ny affirmation of fact or promise . . . which relates to the goods and becomes part of the basis of the bargain,'" ALA. CODE § 7-2-313(1)(a), and that the "seller or manufacturer breached the warranty." Gordon v. Pfizer Inc., 2006 WL 2337002, at *8 (N.D. Ala. May 22, 2006).

Finally, under West Virginia law, a plaintiff establishes a breach of express warranty claim when there is "'the existence of an express warranty, breach of the express warranty, and damages proximately caused by the breach.'" Michael v. Wyeth, LLC, 2011 WL 2150112, at *7 (S.D. W. Va. May 25, 2011) (internal quotation omitted).

The significant common element to establishing a breach of express warranty claim under each state's law is an alleged breach of the warranty. Here, there is no dispute that Panasonic's Limited Warranty covers defects in "materials or workmanship." (Orr Cert., at ¶¶ 3-5 and Exhs. B-D). The parties dispute whether plaintiffs have adequately plead a manufacturing defect, and thus, whether Plaintiffs have sufficiently alleged a breach of the Limited Warranty.

In opposing dismissal of their breach of warranty claims, plaintiffs assert that such claims are sufficiently pled. Specifically, plaintiffs claim that the disputed warranty, covering only defects in "materials and workmanship," includes the Defect here because "workmanship" covers the Televisions' defective computer programming, which is a manufacturing defect. (Opp. Bf. at 4, 39). Additionally, in their Amended Complaint, plaintiffs allege that the Defect is due to "fundamental design, engineering, and manufacturing errors. . . ." (Am. Compl., at ¶ 133).

This Court's careful review of the Amended Complaint reveals that plaintiffs allege only that the Televisions suffer from an inherent design defect and/or improper programming. (See Am. Compl. at ¶¶ 3-4, 8, 28-30, 83-85, 93, 133). Plaintiffs one vague conclusory allegation that the Defect was caused, in part, due to "manufacturing errors" is insufficient to satisfy the requisite pleading standards of Rule 8(a) and Iqbal.

Furthermore, the Court rejects plaintiff's argument in opposition to dismissal that the alleged programming defect is covered by the Limited Warranty. (Opp Bf. at 39). A defect in the

programming of the software which controlled the voltage adjustments is not akin to a defect in materials or substandard workmanship used by Panasonic in replacing or repairing parts under warranty.  See Brothers v. Hewlett Packard Co., 2007 WL 485979, at *4 (N.D. Cal. Feb. 12, 2007) ("Unlike defects in materials or workmanship, a design defect is manufactured *in accordance with* the product's intended specifications.") (applying California law) (Emphasis added); see also Cooper, 374 F. App'x at 2 (concluding that breach of express warranty claim failed because plaintiff's allegation that "the design deviated from Samsung's advertisements and packaging" was not a "manufacturing defect" that would be covered by this warranty).

Even assuming the Limited Warranty can be read to cover manufacturing defects, as previously noted, the Complaint fails to plead sufficient allegations to support a breach of express warranty claim based on a manufacturing defect theory.  Therefore, as Plaintiffs have not alleged a breach of the Limited Warranty covering materials and workmanship, they have not sufficiently pled a claim for breach of express warranty.  Cf. Akin v. Am. Honda Motor Co., 2010 U.S. Dist. LEXIS 32584, at * 17 (D.N.J. Mar. 31, 2010) (wherein court found "[a]t the pleading stage, [] the distinction between defect in design and defect in materials or workmanship is a matter of semantics [where] sufficient facts are alleged to assert both. . . ").

Plaintiffs' contention that the Limited Warranty's one-year limitation clause is unenforceable as unconscionable does not save their breach of warranty claims from dismissal.  While Plaintiffs have indisputably plead unconscionability, (Am Compl., at ¶¶ 134-138), even accepting their allegations as true, they fail to state a claim.

As to the one-year limitations clause, plaintiffs allege that the Defect surfaced shortly after "the Televisions [were] [] brought home,"  (Am. Compl. at ¶ 7), and thus was discovered within the

34

limitations period.  Plaintiffs Hughes and Donahue allege that they contacted Panasonic within one year of the Television's purchase.  (Id. at ¶¶ 37, 39, 42, 50).  Thus, even accepting these allegations as true, Hughes and Donahue do not sufficiently allege how the one-year limitation on the warranty is unconscionable as to them.  See Laney v. American Standard Companies, Inc., 2010 WL 3810637, at *10-11 (D.N.J. Sept. 23, 2010) (distinguishing present case from those actions involving unconscionability argument in context of breach of express warranty claims where plaintiff alleges that defect manifested itself after written warranty had expired).  As such, the instant case is distinguishable from those cases where the latent defect arose *after* the limitations period expired, thus giving rise to an unconscionability argument sufficient to withstand a motion to dismiss.  See, e.g., In re Samsung, 2009 WL 3584352, (finding that action brought after express warranty period expired could survive motion to dismiss based on allegation of unconscionability); Payne v. Fujifilm U.S.A., Inc., 2007 WL 4591281, at * 4 (D.N.J. Dec. 28, 2007) (plaintiff consistently alleged throughout the first amended complaint that the camera defect arose after the express warranty limitations period expired).

As to plaintiffs Stowers, Newell, and Hagans, in the context of their consumer fraud claims, this Court addressed their failure to even allege when the Defect surfaced and whether and when they contacted Panasonic to report the Defect.  As such, any unconscionability argument concerning the one-year express warranty period cannot sustain their breach of express warranty claims under Rule 8(a) and Iqbal.

2.    "Affirmations of Fact" Create a Breach of Express Warranty

Plaintiffs assert that Panasonic's "affirmations of fact regarding black levels, contrast ratios, picture quality and Infinite Black feature" breached the express warranty "because the Televisions

35

do no perform as promised in those affirmations." (Am. Compl., at ¶ 130). Plaintiffs further

contend that Panasonic represented to them and the class members that its products "featured

industry leading black levels and contrast ratios" through its "advertisements, marketing materials,

warranty product guides and the picture quality displayed on brand new Televisions." (Id. at ¶ 5).

In support of its motion to dismiss, Panasonic contends that its alleged marketing statements about

the Televisions' superior picture quality do not create a separate express warranty.

Under the laws of New Jersey, California, Alabama, and West Virginia, "[a]n express

warranty by a seller is created by: '[a]ny affirmation of fact or promise made by the seller to the

buyer which relates to the goods and becomes part of the basis of the bargain,' or '[a]ny description

of the goods which is made part of the basis of the bargain.'" In re Toshiba Am., 2009 WL 2940081,

at * 15 (quoting N.J. STAT. ANN. § 12A:2-313(1)(a)-(b); CAL. COMM. CODE § 2313(1)(a)-(b)); see

also ALA. CODE § 7-2-313; W. VA. CODE § 46-2-313(1)(a); see Commercial Steam Cleaning, L.L.C.

v. Ford Motor Co., 2010 WL 1734792, at *5 (S.D. W. Va. Apr. 27, 2010) (internal citations

omitted).

First, as this Court already concluded in connection with plaintiffs' consumer fraud claims,

Panasonic's statements about the Televisions' "industry leading" technology and features, which

create superior image and color quality, are mere expressions of puffery. As such, these marketing

statements are not sufficient enough to create an express warranty. See In re Toshiba Am., 2009 WL

2940081, at *15. Second, any affirmations of fact that the Televisions' picture quality lasts

significantly longer than what plaintiffs each experienced, (Am. Compl., at ¶¶ 7, 8, 95), do not

establish a breach of express warranty claim. As previously discussed, none of the plaintiffs allege

that they were aware of this affirmation of fact at the time of purchase. As such, plaintiffs have not

sufficiently plead how this alleged affirmation of fact became the basis of the bargain to purchase the Televisions.  In short, the express breach of warranty claims do not satisfy the requisite level of notice pleading, pursuant to Rule 8(a)(2), and clarified by Iqbal.

Therefore, the Amended Complaint fails to state a claim for breach of express warranty. Count Three is dismissed without prejudice. The Court will afford plaintiffs thirty days to file their Amended Complaint and re-plead their breach of express warranty claims.

### F.    Count Four: Breach of Implied Warranty

In support of dismissing plaintiffs' implied warranty claims, Panasonic contends that: (1) plaintiffs fail to establish that their Televisions are not fit for their ordinary use under any of the four states' laws because plaintiffs allege that the Televisions are in working condition; (2) under Alabama and California law, respectively, Hughes and Donahue's implied warranty claims fail for lack of contractual privity; and (3) under New Jersey law, the implied warranty claims of Stowers, Newell and Hagans fail because they do not allege that they presented their complaints of Defect to Panasonic within the one year period governing all warranties, both express and implied, in the Limited Warranties.

After reviewing the Amended Complaint, this Court concludes that plaintiffs' implied warranty claims cannot survive dismissal under any of the possibly applicable state laws.

"'Merchantability' requires that a product conform to its ordinary and intended use." Berenblat v. Apple, Inc., 2009 WL 2591366, at *2 (N.D. Cal. Aug. 21, 2009).  Under each of the four applicable laws, products are merchantable, if they at least:

(a) Pass without objection in the trade under the contract description; and

(b) In the case of fungible goods, are of fair average quality within the description;

and

(c) Are fit for the ordinary purposes for which such goods are used; and

(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) Are adequately contained, packaged, and labeled as the agreement may require; and

(f) Conform to the promises or affirmations of fact made on the container or label if any.[15]

N.J. Stat. Ann. § 12A:2-314; Ala. Code § 7-2-314(2); Cal. Comm. Code § 2314(2); W. Va. § 46-2-314(2); see In re Toshiba Am., 2009 WL 2940081, at *16; Berenblat, 2009 WL 2591366, at * 2-3 (analyzing breach of implied warranty claim in the context of defendant's computer's allegedly defective extra memory slot).

"In order for the implied warranty of merchantability to be breached, the product at issue must have been defective or not fit for the ordinary purpose for which it was intended." In re Toshiba Am., 2009 WL 2940081, at *16; see Berenblat, 2009 WL 2591366, at *3 ("[A] defect must render the product unfit for its ordinary purpose."); Tucker v. General Motors Corp., 769 So. 2d 895, 901 (Ala. Civ. App. 1998) (breach of implied warranty of merchantability may be established by proof of "'the existence of the implied warranty, the breach of that warranty, and damages

---

[15] Plaintiffs contend that, pursuant to the Uniform Commercial Code, the Televisions were not fit for their ordinary purpose, and they did not conform to the "affirmations of compatibility" contained on the container and the labels. (Pl. Opp. Bf at 41). With respect to plaintiffs' proffered allegations of "affirmations of fact" contained in the Amended Complaint, the Court has already determined that they are insufficient to support plaintiffs' consumer fraud and breach of express warranty claims. The Court's findings apply with equal force as a basis for dismissing plaintiffs' implied warranty claims, and thus, will not be reiterated. Instead, the Court will address only plaintiffs' contention that the Televisions are not fit for their ordinary purpose, and thus, Panasonic has breached the implied warranty of merchantability.

proximately resulting from that breach.'"); Agri-Business Supply Co., Inc. v. Hodge, 447 So. 2d 769, 772 (Ala. Civ. App. 1984) (party asserting implied warranty claim must offer proof that the product he purchased from seller is not fit for the ordinary purpose for which the product is used) (internal citation omitted); Anderson v. Chrysler Corp., 403 S.E.2d 189, 194-95 (W. Va. 1991) (in proving a breach of implied warranty claim, a plaintiff must present evidence, either direct or circumstantial, of a defect or a malfunction).

"The implied warranty of merchantability does not 'impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality.'" Berenblat, 2009 WL 2591366, at *3 (quoting Am. Suzuki Motor Corp. v. Super. Ct., 37 Cal. App. 4th 1291, 1295 (Cal. Ct. App. 1995)) (internal citation omitted).  Under section 2-314 of the Uniform Commercial Code, see N.J. STAT. ANN. § 12A:2-314, the warranty of merchantability "'simply means that the thing sold is reasonably fit for the general purpose for which it is manufactured and sold.'"  Ferrari v. American Honda Motor Co., Inc., 2009 WL 211702, at *3 (N.J. App. Jan. 30, 2009) (quoting Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 370 (1960).  Stated differently, merchantability is defined as the product sold "'should be of the general kind described and reasonably fit for the general purpose for which it should have been sold.'"  Id. (quoting Adams v. Peter Tramontin Motor Sales, Inc., 42 N.J. Super. 313, 321 (N.J. App. Div. 1956)); see Agri-Business Supply Co., Inc., 447 So.2d at 773 (merchantability means "that a good sold carries with it an inherent soundness which makes that good suitable for the purpose for which it was designed."); Jones, Inc. v. W.A. Wiedebusch Plumbing & Heating Co., 201 S.E.2d 248, 266 (W. Va. 1980) (merchantability is defined as the goods purchased are "generally fit for their ordinary purposes for which such goods are used") (internal quotation omitted).

Here, in opposition to dismissal, plaintiffs assert that Panasonic too narrowly construes the definition of merchantability by limiting it to a Television's mere functionality.  Instead, according to plaintiff, the Televisions  are defective and not fit for their ordinary purpose in that, shortly after purchase, the Televisions do not maintain the same superior image quality displayed at the time of sale.

While plaintiffs allege that the Televisions are defective, plaintiffs do not allege that the Televisions are inoperable or otherwise are not in working condition.  Indeed, the Amended Complaint does not contain any explicit allegation that plaintiffs can no longer use their Televisions - in other words, that they are no longer generally fit for their ordinary purpose.  (Am. Compl., at ¶¶ 31, 43, 54, 61, 64, 71, 73, 80).  Although the Televisions may not have fulfilled plaintiffs' expectations, plaintiffs do not allege that the Televisions fail to provide a minimum level of quality, which is all that the law requires.  See Berenblat, 2009 WL 2591366, at *3;  see also In re Ford Motor Co. Ignition Switch Prods. Liab. Litig., 2001 WL 1266317, at *22 (D.N.J. Sept. 30, 1997) (merchantability "does not entail a promise by the merchant that the goods are exactly as the buyer expected, but rather that the goods satisfy a minimum level of quality");  Isip v. Mercedes-Benz USA, LLC, 155 Cal. App. 4th 19, 23 (Cal. Ct. App. 2007).[16]

---

[16] Despite plaintiffs' urging, the Court is not persuaded by the recent unpublished opinion of the District Court for the Eastern District of Michigan in Date v. Sony Electronics, Inc., 2010 WL 3702599, at *11 (E.D. MI Sept. 16, 2010), denying the defendants' motion to dismiss the plaintiffs' implied warranty claims under "general applicable theories of law," rather than analyze the claims under the possibly applicable laws of Michigan, California, and New York. Id. at * 7, 8.  In Date, the district court held that it could not conclude, as a matter of law, that the televisions at issue were fit for their intended purpose, as promised by the manufacturer, to "accept and display 1080p signal natively through all of their inputs."  Id. at 11.  The district court reached this conclusion despite the plaintiffs' admission that they were still able to watch regular programming on their televisions.  Id.  Here, plaintiffs' claims fail under any of the possibly applicable laws because the Televisions' complied with their ordinary purpose to create

In short, even accepting plaintiffs' allegations as true, the court finds nothing in the Amended Complaint to allege that the Televisions were not fit for their ordinary purpose of creating and maintaining images on-screen for viewers at the time of purchase. Thus, plaintiffs do not allege sufficient facts to establish their breach of implied warranty of merchantability claims. See, e.g., Laney v. American Standard Companies, Inc., 2010 WL 3810637, at *11 (D.N.J. Sept. 23, 2010) (in granting summary judgment on implied warranty of merchantability claim, court found, although some of the toilets at issue leaked, the "facts do not demonstrate that Laney's toilets were unfit for their 'ordinary purpose,' which is to discard waste into the sewer or septic system."); Sheris v. Nissan N. Am. Inc., 2008 WL 2354908, at *5-6 (D.N.J. Jun. 3, 2008) (in finding that the allegedly defective vehicle was "merchantable," court concluded that, despite the plaintiff's allegation that the brake pads were not of the quality required at the time of purchase and the defendant had knowledge of such a defect, the vehicle's ordinary purpose was to provide safe transportation, which it did at the time of sale); Toshiba Am., 2009 WL 2940081, at *17 (in dismissing the plaintiffs' implied warranty claim, court determined that the plaintiffs did not allege that the HD DVD players at issue could not still play HD DVDs); Terrell v. R & Amfg. Partners, Ltd., 835 So. 2d 216, 228 (Ala. Civ. App. 2002) (affirming, in part, summary judgment granted as to implied warranty claim, despite the plaintiff's complaints that the trailer he purchased exhibited specific defects, reasoning that "the fact that the trailer, while not in perfect condition, has been used in [plaintiff's] [] business since its delivery . . . precludes [his] [] argument that the trailer was not fit to haul loads as a trailer is intended to do.")

---

and maintain images on-screen for viewing.

Finally, with respect to Panasonic's argument that the implied warranty claims of Stowers, Newell, and Hagans fail under New Jersey law, given the one-year limitation clause in the Limited Warranty, the Court already determined that plaintiffs' implied warranty claims do not survive in light of the one-year warranty period. Indeed, in connection with its analysis of plaintiff's breach of express warranty claims, this Court found that the one-year limitation clause is not unconscionable based on the allegations in the Amended Complaint. That analysis applies with equal force to plaintiffs' implied warranty claims.

Accordingly, in light of all the foregoing reasons, plaintiffs' implied warranty claims (Count Four) will be dismissed without prejudice. The Court will afford plaintiffs thirty days to file their Amended Complaint and re-plead their breach of implied warranty of merchantability claims.[17]

### G.    Count Five: Unjust Enrichment

As a threshold matter, Panasonic contends that actual conflicts exist between the laws of Alabama, California and New Jersey governing unjust enrichment claims. As such, Panasonic urges the Court to apply the law of each plaintiff's home state.[18]

Panasonic next argues that, under the laws of Alabama, California, and New Jersey,

---

[17] In support of its motion, Panasonic alternatively argues that Hughes and Donahue's implied warrant claims should be dismissed under Alabama and California law requiring privity of contract. As the Court has already determined that plaintiffs have failed to state a claim for breach of implied warranty, irrespective of privity, the Court declines to address the privity of contract argument.

[18] According to Panasonic, West Virginia's law on unjust enrichment does not conflict with New Jersey, and thus the Court should apply New Jersey law in dismissing Stowers' unjust enrichment claim along with Newell and Hagans – the New Jersey residents – for failure to state a claim. As the parties concede that no conflict exists between the laws of unjust enrichment in New Jersey and West Virginia, the Court will limit its discussion on conflicts of law to Alabama, California, and New Jersey.

respectively, each plaintiff's claim fails as a matter of law.  According to Panasonic, Hughes does not properly allege that he acted under a mistake of fact, that he relied on a right or duty, or that Panasonic, as the recipient of the benefit engaged in unconscionable conduct.  As to Donahue, Panasonic asserts that California does not recognize unjust enrichment as an independent cause of action, and Donahue's claim is precluded by his breach of express warranty claim arising from the Limited Warranty.  Additionally, Panasonic submits that, under New Jersey law, the unjust enrichment claims of Newell, Hagans and Stowers must be dismissed because they do not allege to have conferred a benefit on Panasonic; they fail to allege that they expected remuneration from Panasonic; and the claims sound in tort, which are not recognized as an independent tort.  Finally, Panasonic contends that under New Jersey law unjust enrichment is an equitable remedy, not otherwise available at law, and thus, no such claim can lie here.

In opposition, plaintiffs claim that no material conflicts exist between the possibly applicable state laws.  According to plaintiffs, every state's law on unjust enrichment is based on a benefit conferred on the recipient for which it would be inequitable to allow the recipient to retain.  Accordingly, the Court should apply New Jersey law to plaintiffs' unjust enrichment claims, under which plaintiffs have established viable causes of action.

As previously noted, this Court must apply the most significant relationship test to first determine whether a conflict exists between the unjust enrichment laws of Alabama, California, New Jersey.  See supra discussion at Point II.B.  See also P.V., 197 N.J. at 143.   If no actual conflict exists, then the Court will apply the law of the forum state, here New Jersey.  See In re Mercedes-Benz Tele Aid Contract Litig., 257 F.R.D. 46, 58 (D.N.J. 2009) (citing Kearney v. Salomon Smith Barney, Inc., 137 P.3d 914 (Cal. 2006); P.V., 197 N.J. at 143).

43

The key issue is whether the laws of these three states governing unjust enrichment claims differ in a material manner, such that an actual conflict exists.  There is no uniformity among courts that have addressed the issue of whether all fifty states have substantially similar elements for unjust enrichment claims.  Several courts, including many in the Third Circuit, have held that no material differences exist between the laws of all fifty states governing unjust enrichment.  See Keilholtz v. Lennox Hearth Products, Inc., 268 F.R.D. 330, 341 (N.D. Cal.2010) (noting that "differences in state laws do not always outweigh the similarities, especially in cases concerning unjust enrichment claims," and thus such differences are not material "because they do not significantly alter the central issue or the manner of proof in this case."); In re Mercedes-Benz Tele Aid Contract Litig., 257 F.R.D. 46, 58 (D.N.J. 2009) (concluding that "[w]hile there are minor variations in the elements of unjust enrichment under the laws of the various states, those differences are not material and do not create an actual conflict," and thus the Court applied New Jersey law); Agostino, 256 F.R.D. at 463-64 (finding that no actual conflict exists between the laws of unjust enrichment); Powers v. Lycoming Engines, 245 F.R.D. 226, 231 (E.D. Pa. 2007) (reviewing unjust enrichment laws of the 50 states, and concluding that, "[a]lthough there are numerous permutations of the elements of the cause of action in the various states, there are few real differences."), vacated and remanded by, Powers v. Lycoming Engines, 328 F. App'x 121 (3d Cir. Mar. 31, 2009).

On the other hand, other courts have held that significant differences exist among the elements of unjust enrichment claims in many states.  See, e.g., Cruz v. Lawson Software, Inc., 2010 WL 890038, at *6 (D. Minn. Jan. 5, 2010) (concluding that "material conflicts" exist among 43 possibly applicable state laws on unjust enrichment claims);  Thompson v. Bayer Corp., 2009 WL 362982, at *4-5 (E.D. Ark. Feb. 12, 2009) (highlighting material differences between Arkansas,

44

Alabama, and Montana's laws of unjust enrichment concerning wrongful conduct, direct relationships between buyers and sellers, and adequate remedies at law); Siegel v. Shell Oil Corp., 256 F.R.D. 580, 584 (N.D. Ill. 2008) (discussing differences in elements of unjust enrichment claim among several states in context of class certification motion).

Here, the Court need not resolve this thorny conflicts of law issue because, based on the allegations in the Amended Complaint, plaintiffs' unjust enrichment claims fail under either Alabama, California, and New Jersey.

Plaintiffs allege the following allegations in support of their unjust enrichment claim:  (1) "Panasonic failed to disclose that the picture quality of the Televisions it sold would dramatically deteriorate . . . during the first year of use due to the defective design . . . ." (Am. Compl., at ¶ 150); (2) "Panasonic did not disclose to Plaintiffs . . . that they would incur significant costs to repair or replace their Televisions long before the expiration of the expected useful life." (Id. at ¶ 151);  (3) "By purchasing the Televisions, Plaintiffs . . . conferred a benefit upon Panasonic. . . ."  (Id. at ¶ 152); (4) "Panasonic knowingly accepted and retained this non-gratuitous benefit," despite its knowledge that Plaintiffs would rely on Panasonic's misrepresentations about the superior picture quality and Panasonic's knowledge of the Defect.  (Id. at ¶ 153); and (5) Panasonic's retention of the benefit is "unjust and inequitable."  (Id. at ¶ 155).

1.    Alabama Law

Under Alabama law, "'[o]ne is unjustly enriched if his retention of a benefit would be unjust.'"  Welch v. Montgomery Eye Physicians, P.C., 891 So.2d 837, 843 (Ala. 2004) (quoting Jordan v. Mitchell, 705 So.2d 453, 458 (Ala. Civ. App. 1997)).  The retention of a benefit is unjust if:

45

> '(1) the donor of the benefit . . . acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit ... engaged in some unconscionable conduct, such as fraud, coercion, or absence of a confidential relationship.'

Id. (quoting Jordan, 705 So.2d at 458).

Here, plaintiffs do not allege that they purchased the Televisions based on a mistake of fact or in misreliance on a right or duty. Additionally, although plaintiffs allege that Panasonic made misrepresentations about the superior picture quality and concealed the allege Defect, the Court has already concluded that such alleged misrepresentations about the picture quality are mere puffery while Panasonic's alleged failure to disclose the Defect is insufficiently pled to satisfy Rule 9(b) and Iqbal.

2.    California Law

To plead a claim for unjust enrichment, California requires "receipt of a benefit and unjust retention of the benefit at the expense of another." Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (Cal. Ct. App. 2000). Panasonic argues that California does not recognize an independent cause of action for unjust enrichment. There is a split among California courts as to whether unjust enrichment is an independent claim or it is merely akin to restitution. Foster Poultry Farms v. Alkar-Rapidpak - MP Equip., Inc., 2011 WL 2414567, at *6 (E.D. Cal. Jun. 8, 2011) (citing cases illustrating split among California courts and concluding that no such independent cause of action for unjust enrichment exists).

Yet, even assuming California courts uniformly recognized unjust enrichment as an independent cause of action, this Court would still find that plaintiffs have failed to state a claim for unjust enrichment under California law. For those courts recognizing a separate cause of action for

46

unjust enrichment, such claims may lie where a "person receives a benefit because of another's mistake," or where "[a] person's notice of the circumstances giving rise to unjust enrichment affects that person's obligation to make restitution." First Nationwide Savings v. Perry, 11 Cal. App. 4th 1657, 1663, 1668 (Cal. Ct. App. 1992).

As noted above, the Amended Complaint contains no allegations of mistake by plaintiffs. Additionally, this Court has previously found that, to the extent plaintiffs allege Panasonic had knowledge of the Defect, such allegations fall short of Rule 9(b) and Iqbal pleading standards.

### 3.   New Jersey Law

To establish a claim of unjust enrichment in New Jersey,  "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 110 (2007) (quoting VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994)).  Furthermore, unjust enrichment "requires that [a] plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." VRG Corp., 135 N.J. at 554.

The Court finds that plaintiffs have insufficiently pled a claim for unjust enrichment under New Jersey law.   First, plaintiffs have not alleged any facts indicating that they expected remuneration from Panasonic at the time of purchase, or that Panasonic's failure to remunerate enriched Panasonic beyond its contractual rights.  Accordingly, plaintiffs fail to state a claim for unjust enrichment.  See McCalley v. Samsung Electronics Am., Inc., 2008 WL 878402, at *10 (D.N.J. Mar. 31, 2008) (dismissing unjust enrichment claim in class action because plaintiff purchaser of allegedly defective television failed to allege facts supporting any expectation of

remuneration from defendant corporation at time of purchase or that failure of remuneration enriched defendant beyond contractual rights).

In any event, plaintiffs' unjust enrichment claim fails because they do not allege to have conferred a benefit upon Panasonic. "'[I]t is the plaintiff's . . . conferral of a benefit on defendant which forms the basis of an unjust enrichment claim.'" Laney, 2010 WL 3810637, at *12 (quoting Eli Lilly and Co. v. Roussel Corp., 23 F. Supp.2d 460, 496 (D.N.J. 1998)).  To support an unjust enrichment claim, there must be a direct relationship between the parties or there "must be a mistake on the part of the person conferring the benefit." Fasching v. Kallinger, 211 N.J. Super. 26, 36 (N.J. App. Div. 1986).  See Nelson v. Xacta 3000 Inc., 2009 WL 4119176, at * 7 (D.N.J. Nov. 24, 2009)).

As it relates to the present context, if a plaintiff purchases a product from a third party retailer, rather than the defendant, then no direct relationship exists where the plaintiff purchaser conferred a benefit on the defendant.  See, e.g., Laney, 2010 WL 3810637, at *12 (finding no direct relationship to support unjust enrichment claim as plaintiff bought toilets from Home Depot not defendant); Cooper v. Samsung Electronics Am., Inc., 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008) (dismissing unjust enrichment claim because  plaintiff purchased television through  third party retailer, not defendant Samsung, and thus, there was no direct relationship wherein plaintiff conferred  benefit on  defendant); Maniscalco, 627 F. Supp.2d at 505-06 (unjust enrichment claim dismissed where plaintiffs conceded that they had bought printers from third-party retailer not defendant).

Similarly, plaintiffs here allege that they purchased the Televisions from third parties, including on-line company Amazon.com, U.S. Appliance, Sears, and  Boscov's  (Am. Compl., at ¶¶ 37, 47, 60, 68, 77).  Thus, as plaintiffs have not alleged a direct relationship with Panasonic, they

have not sufficiently pled their unjust enrichment claim.  Furthermore, plaintiffs have not alleged that they engaged in a mistake in conferring any benefit on Panasonic.

Accordingly, plaintiffs fail to state a claim for unjust enrichment under the laws of either Alabama, California, or New Jersey, and thus Count Five of the Amended Complaint will be dismissed without prejudice.  Plaintiffs have thirty days to re-plead their claim.[19]

## III.   CONCLUSION

For the reasons set forth above, each of plaintiffs' claims fail to state a claim under Rule 12(b)(6), to satisfy Rule 9(b) heightened pleading requirements, and/or pleading standards under Iqbal.  The Court will grant Panasonic's motion to dismiss the Amended Complaint (Counts One through Five) without prejudice.  The Court will afford plaintiffs thirty (30) days in which to re-plead their Amended Complaint to cure the pleading deficiencies in their five claims.  Plaintiffs' failure to do so will result in dismissal of their Amended Complaint with prejudice.  As the Court dismisses the Amended Complaint in its entirety, Panasonic's motion to strike the class allegations is dismissed as moot.


S/Susan D. Wigenton, U.S.D.J.


cc:   Hon. Madeline Cox Arleo, U.S.M.J.
      Clerk of the Court
      Parties

---

[19] In light of the Court's dismissal of the unjust enrichment claim on such grounds, the Court declines to address the merits of Panasonic's alternative arguments in favor of dismissal.